**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant,**

v.

**William Hayden WATSON, Appellee.**

**No. 01–96–00482–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 17, 1997.

Stacey Suzette Zipp, Houston, for Appellant.

Lloyd D. Stansberry, Alvin, for Appellee.

Before HEDGES, O'CONNOR and HUTSON–DUNN,* JJ.

## OPINION

HEDGES, Justice.

We are asked to decide whether a breath specimen, breathed into a portable breath tester (PBT) as one of a battery of field sobriety tests, constitutes a "breath specimen" as defined by the Texas implied consent law. The appellant, the Texas Department of Public Safety (the Department),

appeals from the order of the county court at law overturning the suspension of the driver's license of the appellee, William Hayden Watson. In two points of error, the Department contends the county court at law erred when it (1) held that Watson had provided a specimen in compliance with TEX.TRANSP.CODE ANN. ch. 724 (Vernon Pamph.1997),[1] and (2) reversed the decision of the administrative law judge. We reverse the judgment of the county court.

### The Facts

The facts adduced at the administrative hearing on October 12, 1995 were the following: On September 3, 1995, about 6:30 p.m., the Department's Trooper Steven McAdams[2] stopped Watson on a side street off the Blue Highway in Surfside, Brazoria County, Texas when he saw that Watson was not wearing a seat belt.[3] Watson was driving a 1992 Chevrolet pickup truck. The seat belt latch was up above Watson's shoulder.

Watson committed no other traffic code violations, and he pulled over promptly when McAdams activated his overhead lights. When McAdams approached the stopped truck, he saw that Watson had his seat belt on. McAdams noticed that Watson's breath smelled strongly of alcohol, that his eyes were red and bloodshot, that his speech was slurred, and that he was swaying. McAdams asked Watson to perform three field sobriety tests—the horizontal gaze nystagmus (HGN), the walk-and-turn, and the Romberg—and to blow into a PBT. It was uncontroverted that Watson gave McAdams a specimen of breath for the PBT.

The HGN showed a jerking of the eyes at maximum deviation that started before 45 degrees. McAdams testified the result of the HGN indicated intoxication. During the

---

* The Honorable D. Camille Hutson–Dunn, retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. The Transportation Code was created by act of May 23, 1995, ch. 165, 74th Leg., R.S., 1995 Tex.Gen.Laws 1025, to be effective September 1, 1995. It represented a nonsubstantive revision of the statutes according to TEX.GOV'T CODE ANN. § 323.007 (Vernon 1988). *See* ch. 165, § 25, 1995 Tex.Gen.Laws at 1871. Frequently, the ref-

erences in the record are to the statutory section numbers prior to the revision.

2. McAdams was the only witness at the hearing.

3. Section 545.413(a) of the Texas Transportation Code (Vernon Pamph.1997) subjects to a penalty all persons riding in the front seat of a passenger car equipped with safety belts who fail to wear a safety belt when the vehicle is operated.

walk-and-turn, Watson could not balance during the instructions; he started before the end of the instructions; he stopped while he was walking; he used his arms for balance; he walked the wrong number of steps. During the Romberg, Watson estimated 17 seconds for 30, and he had a one-inch back-and-forth sway. Watson had a failing score on the PBT, but McAdams did not record the exact numerical score. In response to a question from Watson's attorney about what the PBT was designed to do, McAdams noted: "It just confirms or denies your suspicions." No video was made of the tests.

McAdams then arrested Watson for the offense of driving while intoxicated and transported him to a nearby Department command post. At the command post, McAdams read Watson DIC–24, entitled "Police Officer DWI Statutory Warning," and gave him a copy. Watson refused to sign it and refused to give a breath specimen as requested by McAdams.

### Notice of Suspension and the Administrative Hearing

Following McAdams's report of Watson's refusal to give a specimen, the Department issued a notice of suspension of Watson's driver's license in accordance with TEX. TRANSP.CODE ANN. § 724.033 (Vernon Pamph.1997). *See* TEX.TRANSP.CODE ANN. § 724.035 (Vernon Pamph.1997) (if a person refuses the request of a peace officer to submit to the taking of a specimen, the Department shall suspend the person's driver's license for 90 days). Watson requested an administrative hearing. *See* TEX.TRANSP. CODE ANN. § 724.041 (Vernon Pamph.1997). Accordingly, a hearing was held on October 12, 1995.

At the conclusion of the evidence at the hearing, counsel for Watson argued as follows:

Your Honor, we believe that the State's request for a suspension should be denied. The allegation in State's Exhibit Number 1 indicates that there was a refusal to give a specimen of breath.
*I think the record in its current state affirmatively reflects that [Watson] did give a specimen of his breath by blowing*
*in the PBT* and by the indication by the officer that there was a failure on the machine that he did blow into.
So we believe it to be allegata non probata, and their petition should be denied.

(Emphasis added.)

The Department argued that an officer could request more than one specimen, that a PBT was a probable cause tool, and that only the certified instrument, an Intoxilyzer 5000, could be used to determine a driver's alcohol concentration for the purpose of suspending his license for the offense of driving while intoxicated. *See* TEX.TRANSP.CODE ANN. §§ 724.015(3), 724.016 (Vernon Pamph.1997).

### Decision of the Administrative Law Judge

The administrative law judge concluded by a preponderance of the evidence that Watson's license should be suspended. The findings of the administrative law judge were as follows, TEX.TRANSP.CODE ANN. § 724.043 (Vernon Pamph.1997):

(1) The PBT performed by McAdams in the field went to the officer's determination of probable cause. The breath specimen requested for the PBT was not the same as the breath specimen requested of Watson at the command post after his arrest under TEX.TRANSP.CODE ANN. §§ 724.011 & 724.012 (Vernon Pamph. 1997).

(2) Watson's refusal to sign the Police Officer DWI Statutory Warning form and to give a breath specimen supported the Department's action in suspending Watson's driver's license under the implied consent law.

### Appeal to the County Court at Law

 Watson appealed the decision of the administrative law judge to the county court at law. TEX.TRANSP.CODE ANN. §§ 524.041, 724.047 (Vernon Pamph.1997). In these circumstances, a county court at law may not substitute its judgment for that of the administrative law judge on the weight of the evidence, but it may reverse the case if the substantive rights of the appellant have been prejudiced because the administrative find-

ings are: (1) in violation of a constitutional or statutory provision; (2) in excess of the agency's statutory authority; (3) made through unlawful procedure; (4) affected by other error of law; (5) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) arbitrary or capricious. TEX. GOV'T CODE ANN. § 2001.174(2) (Vernon Pamph.1997); TEX.TRANSP.CODE ANN. § 524.002(b) (Vernon Pamph.1997).

The county court at law reviewed the record certified by the State Office of Administrative Hearings with no additional testimony. TEX.TRANSP.CODE ANN. § 524.043(a) (Vernon Pamph.1997). The court heard only arguments of counsel at a hearing on January 11, 1996. Counsel for Watson argued:

Under the testimony and the allegations in this case, your Honor, the allegation and the notice which is in the record alleges that Mr. Watson failed to give a specimen of his breath or blood at the request of the arresting officer. That is their allegation, your Honor; and as the Court knows, if you allege it, you have to prove it.

*The allegations that were brought against Mr. Watson were not ones in which they alleged that he—he refused to give more than one specimen of his blood or breath for the purpose of determining his blood-alcohol level. Accordingly, based upon the allegation that they made in the case, your Honor, that he refused to give a specimen, the allegations were not proven. It was proven that he did indeed give a specimen. What was not alleged in their pleadings was that he failed to give an additional specimen of his breath. So, based under their pleadings* that they filed with the administrative law Judge, that he refused to give a specimen, *the evidence does not*

*support that allegation* and their petition should be denied.

(Emphasis added.)

On January 19, 1996, the court reversed the decision of the administrative law judge in an order that stated:

The pleadings of [the Department] requesting suspension of [Watson's] driver's license allege that he had failed to give a specimen of his breath upon proper request of the arresting officer. *The Court finds as a matter of fact and of law that [Watson], complied with the officer's request to provide a specimen of his breath by the uncontradicted testimony in the Administrative Law Hearing below.* It is the Court's understanding that the Department's position in this matter is that a specimen provided by [Watson] was insufficient under the Transportation Code. The Court disagrees. *The Court finds that, inasmuch as the Department has alleged [Watson's] refusal to provide "a" specimen, that same is not supported by the record.* The uncontradicted testimony of the officer from the ALR hearing below affirmatively demonstrates that "a" specimen was indeed provided by [Watson]. Accordingly, it is ORDERED, ADJUDGED and DECREED that [Watson's] Appeal from the Administrative Law Hearing below is well taken and that the Department's request for a suspension of [Watson's] driver's license is in all things DENIED.

(Emphasis added.) It is from this order of the county court at law that the Department appeals.[4]

### Did Watson Provide a Specimen?

In point of error one, the Department contends that the county court at law erred when it held that Watson had provided a

4. Section 724.047 of the Texas Transportation Code (Vernon Pamph.1997) provides that chapter 524 of the Code governs an appeal from an action of the Department following an administrative hearing. Section 524.002(b) of the Texas Transportation Code provides that the Administrative Procedure Act, TEX.GOV'T CODE ANN. ch. 2001 (Vernon Pamph.1997), applies to proceedings under chapter 524 to the extent consistent with that chapter. Section 2001.901(a) of the Texas Government Code (Vernon Pamph.1997) provides that a party may appeal a final district court judgment in the manner provided for civil actions generally. *See Texas Dep't of Public Safety v. Lavender,* 935 S.W.2d 925, 927–28 (Tex. App.—Waco 1996, writ requested) (a court of appeals has jurisdiction to hear an appeal of the Department from an order of the county court reversing the license suspension order of the administrative law judge, citing the aforementioned statutes).

specimen in compliance with chapter 724 of the Texas Transportation Code. The Department argues that the provisions of chapter 724 did not apply in the pre-arrest phase where Watson took the PBT; they applied only after Watson had been placed under arrest for driving while intoxicated.

Watson maintains that the Department has improperly framed the issue on appeal. According to Watson, the issue is whether he failed to provide a specimen pursuant to the Department's pleadings contained in the Department's notice of hearing. Watson contends that had the Department pleaded statutory language concerning whether he had provided "one or more specimens," the administrative law judge would have arguably been in the position to hold that Watson had not done so. But because it chose to plead more narrowly than it was entitled to do under the law, the Department must be held to its pleadings.

■ We begin with a review of chapter 724, Implied Consent, of the Texas Transportation Code. "Implied consent" means that if a person is arrested for an offense arising out of the operation of a motor vehicle in a public place while intoxicated, he is deemed to have consented to the taking of one or more specimens of his breath or blood for analysis to determine alcohol concentration. TEX.TRANSP.CODE ANN. § 724.011.

However, a person cannot be forced to breathe into a breathalyzer or have a needle with syringe forcibly poked into his arm.[5] Notwithstanding a person's "implied consent," a specimen can be taken only if the person agrees to the request of a peace officer for one. TEX.TRANSP.CODE ANN. § 724.013 (Vernon Pamph.1997).[6] If a person refuses a peace officer's request to submit to the taking of a specimen, however, the Department is required to suspend his driver's license. TEX.TRANSP.CODE ANN. § 724.035 (Vernon Pamph.1997). The period of suspension depends on the age of the driver and whether he has had "alcohol-related or drug-related enforcement contacts" during the previous five years.

■ The provisions of the implied consent law apply *postarrest*. TEX.TRANSP.CODE ANN. § 724.002 (Vernon Pamph.1997); *Nottingham v. State*, 908 S.W.2d 585, 588 (Tex. App.—Austin 1995, no pet.); *see also Aliff v. State*, 627 S.W.2d 166, 168 (Tex.Crim.App. 1982) (interpreting a predecessor statute). Additionally, "one or more specimens" may be requested and taken. *See* TEX.TRANSP. CODE ANN. §§ 724.011 & 724.012; *State v. Gonzales*, 850 S.W.2d 672, 674 (Tex.App.— San Antonio 1993, pet. ref'd) (even if the breath test has been completed, the State would still be able to use the "implied consent" found in article 6701*l*-5, section 1 [now TEX.TRANSP.CODE ANN. §§ 724.011 & 724.012] to secure consent from an arrestee for a successive blood test).

The following facts are undisputed in this record:

(1) Shortly after McAdams pulled him over and *before* he was placed under arrest, Watson gave McAdams a specimen of breath.

(2) After Watson failed four field sobriety tests, McAdams arrested him and drove him to a Department station.

(3) At the station, McAdams read Watson DIC–24, the standard form that explains to the person that he is under arrest for driving while intoxicated; that a specimen is being requested; that if a specimen is refused, his driver's license will be suspended; that if a specimen is given and shows an alcohol concentration above a certain point, his driver's license will be suspended; that the person is entitled to a hearing on suspension; and that the person has been orally advised of the consequences of a refusal to give a specimen or providing a specimen with an alcohol concentration above a certain point.

---

**5.** Despite the general prohibition on taking a specimen, if the person refuses a request for one, there are specific instances where a specimen must be taken. TEX.TRANSP.CODE ANN. § 724.012(b) (Vernon Pamph.1997). None of the exceptions are relevant here.

**6.** A peace officer may request a breath or blood specimen only if the person is arrested and if the officer has reasonable grounds to believe the person operated a motor vehicle in a public place while intoxicated. TEX. TRANSP. CODE ANN. § 724.012(a) (Vernon Pamph.1997).

(4) Watson refused to sign DIC–24 and refused to give a specimen.

These facts demonstrate that McAdams used the PBT as an indicator of intoxication. As he stated: "It just confirms or denies your suspicions." *See, e.g., Fernandez v. State,* 915 S.W.2d 572, 576 (Tex.App.—San Antonio 1996, no pet.) (the passive alcohol sensor test was not administered for the purpose of ascertaining alcohol concentration but, rather, was given as one of several field sobriety tests as an indicator of intoxication). These facts also show that Watson refused to provide a specimen when one was requested by a peace officer in accordance with the provisions of chapter 724 and after receiving the requisite statutory warnings. Even if the PBT constituted the giving of a specimen under chapter 724, Watson did not have the luxury of refusing a second specimen under chapter 724 without the attendant risk of license suspension. *See Gonzales,* 850 S.W.2d at 674.

The pleadings in the Department's notice of hearing state:

THAT, on or about 09/03/95 reasonable suspicion to stop Defendant [Watson] or probable cause to arrest Defendant existed.

THAT, on or about 09/03/95 probable cause existed that Defendant was driving or in actual physical control of a motor vehicle in a public place while intoxicated.

*THAT, on or about 09/03/95 Defendant was placed under arrest and was offered an opportunity to give a specimen of breath or blood* under the provisions of Tex.Transp.Code Ann. ch. 724.

*THAT, on or about 09/03/95 Defendant refused to give a specimen on request of the officer.*

(Emphasis added.)

Watson focuses only on the fourth paragraph of the notice, that he "refused to give a specimen." That paragraph must be read in conjunction with the other paragraphs of the notice. Watson's "refusal" relates back to the specimen that was requested *after* he was arrested and read DIC–24. Even if the fourth paragraph stands on its own, the evidence shows that Watson in fact did refuse a specimen. Because one or more specimens may be requested under chapter 724, a refusal to provide a second specimen will trigger the consequence of license suspension. *See Gonzales,* 850 S.W.2d at 674.

In its findings of facts, the county court at law stated:

IV. The Court finds that a hearing on this matter was conducted on October 12, 1995 before the Honorable Tim Horan, Administrative Law Judge, before the State Office of Administrative Hearings. During the course of said hearing, the record which has been brought before this court affirmatively reflects that McAdams obtained "a specimen" of Mr. Watson's breath pursuant to said officer's request.

Despite the uncontroverted facts and the provisions of the implied consent law, the county court at law concluded that "the Department's allegations that [Watson] refused to give 'a specimen' of his breath is not demonstrated by the record from the Administrative Law hearing." Based on the administrative record and chapter 724 of the Texas Transportation Code, the county court at law erred in its findings of facts and conclusions of law. Watson did not provide a specimen under the implied consent law; in fact, he refused to provide the breath specimen requested by McAdams.

We sustain the Department's point of error one.

## Was the Decision of the Administrative Law Judge Supported By Substantial Evidence?

In point of error two, the Department asserts that the county court at law erred when it reversed the decision of the administrative law judge because the decision of the administrative law judge was supported by substantial evidence.

Based on our discussion of the evidence and the law under point of error one, we conclude the decision of the administrative law judge was supported by substantial evidence in the record. Tex.Transp.Code Ann. § 724.047 (Vernon Pamph.1997); Tex. Transp.Code Ann. § 524.043(a); Tex.Transp. Code Ann. § 524.002(b); Tex.Gov't Code

ANN. § 2001.174 (Vernon Pamph.1997); *see Texas Health Facilities Comm'n v. Charter Medical—Dallas, Inc.*, 665 S.W.2d 446, 452–53 (Tex.1984) (the supreme court reviewed the commission's decision under the substantial evidence rule).

We sustain the Department's point of error two.

We reverse the judgment of the county court at law and render judgment affirming the order of the administrative law judge suspending the driver's license of William Hayden Watson.