**Earl Garland MOORE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–97–00631–CR, 01–97–00632–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 20, 1998.

---

Michael B. Charlton, Houston, for appellant.

John B. Holmes, Houston, William Delmore, III, Houston, for appellee.

Before O'CONNOR, TAFT, and SMITH,* JJ.

## OPINION ON MOTION
## FOR REHEARING

O'CONNOR, Justice.

Earl Garland Moore, the appellant, appeals his convictions for driving while intoxicated (DWI). On motion for rehearing, we overrule the motion, withdraw our earlier opinion, and issue this one in its stead. We affirm.

### Background

On January 24, 1997, the appellant was stopped for having an expired inspection sticker on his car. On February 19, 1997, the appellant was stopped for not wearing his seatbelt. After both stops, he was arrested for DWI and he refused to perform a breath test.

The appellant was charged by information with two counts of misdemeanor DWI. His January arrest was charged under trial cause number 9703541 (our cause number 01–97–00631–CR), and his February arrest was charged under trial cause number 9707342 (our cause number 01–97–00632–CR). The cause numbers were brought together in the county court.

In both cases, the appellant filed identical pretrial motions, asking the court (1) to suppress his refusals to take breath tests and all evidence arising out of his initial stops, and (2) to declare Texas Transportation Code section 724.061 unconstitutional. The appellant and the State filed an agreed stipulation of facts.

On his first arrest, the appellant and the State stipulated the appellant was stopped by Officer Hill on January 24, 1997, because Hill concluded the inspection sticker on the appellant's car was expired. Hill smelled an alcoholic beverage when he approached the appellant, and so had the appellant get out of his car for DWI investigation. Hill arrested the appellant for DWI due to the appellant's demeanor, his failure of field sobriety tests, and the smell of an alcoholic beverage. Officer Cortez then took custody of the appellant from Hill and brought him to the Harris County Courthouse Annex for further DWI investigation, including videotaping and a breath test request. Cortez gave the appellant his DWI statutory warnings orally and in writing, and the appellant refused to take a breath test on the Intoxilyzer 5000. The appellant did not explain his refusal to take the test and was not told anything regarding the Intoxilyzer's accuracy or reliability. After his refusal to take the breath test, the appellant was videotaped. The appellant denied drinking and said he had used antiseptic mouthwash just before driving. At the end of the tape, the appellant's warnings were read and the appellant invoked his right to an attorney. The taping was stopped at that point.

On his second arrest, the appellant and the State stipulated that he was stopped on February 19, 1997, by Officer Taylor because the officer concluded the appellant was not wear-

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

ing his seatbelt. Taylor ordered the appellant out of his car and became suspicious that the appellant was intoxicated. Taylor arrested the appellant for DWI because of his demeanor, his refusal to take some field sobriety tests, his failure of other tests, and the smell of an alcoholic beverage. Officer Magee took custody of the appellant from Taylor and brought the appellant to the Harris County Sheriff's Department for further DWI investigation. At the sheriff's department, Magee gave the appellant his written and oral DWI statutory warnings. Without an explanation, the appellant refused the breath test on the Intoxilyzer 5000. The police did not tell the appellant any facts regarding the accuracy or reliability of the Intoxilyzer. After he refused to take a breath test, the appellant was brought into the videotape room for the purpose of taping his interrogation and his performance of field sobriety tests. The appellant refused to participate in the taping session and did not waive his rights, and the taping session was stopped.

On June 2, 1997, a hearing was held on the appellant's pretrial motions. The trial court denied all of his motions, except it suppressed the audio portion of the videotape made the night of his January arrest, during which the appellant invoked his right to counsel. The appellant then pled no contest to both charges of misdemeanor DWI, pursuant to a plea bargain, and pled true to an enhancement paragraph. The trial court found him guilty of both charges of DWI and assessed the recommended punishment of a year in jail, probated for two years, a $1,500 fine, and a two-year suspension of his driver's license. The appellant received the trial court's permission to appeal his pretrial motions.

### General Motion to Suppress

In points of error one, two, and three in both cause numbers, the appellant argues the trial court erred in not granting his motion to suppress because the stipulated evidence was too conclusory to establish probable cause to stop him in the first place.[1] We disagree.

The appellant stipulated he was stopped on January 24, 1997, by Officer Hill, who concluded the appellant's inspection sticker had expired in December 1996, and on February 19, 1997, by Officer Taylor, who concluded the appellant was not wearing his seat belt as he drove down Railroad Street. The appellant stipulated that the officers concluded the appellant might be intoxicated. The officers investigated the appellant's sobriety further, and based on his demeanor, the smell of an alcoholic beverage, his failure of field sobriety tests, and, in the case of the February stop, his refusal to take other field sobriety tests, arrested him for DWI.

In his motions to suppress, the appellant made general claims that he was subjected to illegal detentions, searches, and seizures, and that the officers lacked probable cause. He also alleged he was subjected to illegal custodial interrogations and was wrongly denied counsel. The appellant argued in his motions:

> The seizure of the [appellant] was pretextual and made without any reasonable suspicion that he was engaged in criminal activity. The acquisition of the evidence which will be offered by the Government in this cause was not pursuant to a reasonable investigative detention, not pursuant to an arrest warrant, was absent exigent circumstances, and made without probable cause to believe the [appellant] was engaged in criminal activity.
>
> The acquisition of the evidence which the Government will offer in the cause was not pursuant to a search warrant, was absent exigent circumstances, and made without probable cause to believe the [appellant] was engaged in criminal activity or that such evidence, if any, was in danger of being destroyed.

At the hearing on his pretrial motions, the appellant did not explain why the two stops were without probable cause. With respect to the motion in cause number 01–97–00632–CR, the February arrest, defense counsel said, "[W]e have a general catch-all motion, which has grounds: illegal detention, search and seizure, illegal custodial interrogation, denial of counsel, no consent." With respect

---

1. In his reply brief, the appellant waived point of error four in cause number 01–97–00631–CR.

to the motion in cause number 01–97–00631–CR, the January arrest, defense counsel said, "That will bring me to the general Motion to Suppress ... [a]nd there I ask the Court to rule on the motion as a whole, under all the issues that are there. Subcategories like illegal detention, search and seizure, illegal custodial interrogations, denial of counsel, no consent." At no time when the appellant was before the trial court did he make the argument he makes here—that the stipulated evidence was too conclusory to establish probable cause for the stops.

■ A defendant should not be allowed to stipulate to evidence, and then attack it for the first time on appeal on the grounds that the stipulation was too conclusory and did not set out the underlying basis for the arresting officer's conclusions. Without a showing that the officers' conclusions were *not* based on their personal observations, the stipulations will be viewed in the light most favorable to the trial court's judgments. *See Yorko v. State,* 699 S.W.2d 224, 226 (Tex. Crim.App.1985) (trial court, as trier of fact, could draw reasonable inferences and deductions from stipulation). Viewed in that light, it is a fair inference that the officers' conclusions were based on their personal observations.

To the extent that the appellant attacks the officers' conclusions as being without sufficient underlying grounds, the appellant waived any error arising out of the conclusory stipulated facts. *See* TEX.R.APP.P. 33.1(a)(1)(A) (the record must show the complaint was made to the trial court with sufficient specificity to make the trial court aware of the basis for the complaint); *Collier v. State,* 959 S.W.2d 621, 626 (Tex.Crim.App. 1997); *Rushing v. State,* 962 S.W.2d 100, 102 n. 2 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd).

We overrule points of error one, two, and three in both cause numbers.

## Motion to Suppress Based on Erroneous Statutory Warnings

In point of error six in cause number 01–97–00631–CR and point of error five in cause number 01–97–00632–CR, the appellant claims the trial court erred in refusing to suppress evidence of his refusal to take a breath test because the officers gave him an erroneous warning on the consequences of such a refusal. We disagree.

In both arrests, the appellant was arrested and taken to a Harris County facility for breath testing, videotaping, and interrogation. In each case, he refused to take a breath test and was given a statutory warning. After his January arrest, the warning he was given read as follows:

You are under arrest for an offense arising out of acts alleged to have been committed while you were operating a motor vehicle in a public place while intoxicated. You will be asked to give a specimen of your breath and/or blood. The specimen will be analyzed to determine the alcohol concentration or the presence of a controlled substance, drug, dangerous drug, or other substance in your body.

If you refuse to give the specimen, that refusal may be admissible in a subsequent prosecution. Your license, permit, or privilege to operate a motor vehicle will be suspended or denied for not less than ninety (90) days if you are 21 years or older, or not less than 1 year if you are under 21, whether or not you are prosecuted for this offense.

If you give the specimen and analysis shows that you have an alcohol concentration of 0.10 or more, your license, permit, or privilege to operate a motor vehicle will be suspended or denied for at least sixty (60) days, whether or not you are prosecuted for this offense.

You may request a hearing on the suspension or denial. This request must be received by the Texas Department of Public Safety at its headquarters in Austin, Texas, no later than 15 days after you receive or are presumed to have received notice of suspension or denial.

The warning he was given after his February arrest read:

You are under arrest for the offense of Driving While Intoxicated. You will be requested to submit to the taking of a specimen of your Breath for the purpose of analysis to determine the alcohol concen-

tration or the presence of a controlled substance, a drug, a dangerous drug, or any other substance in your body.

If you refuse to give the specimen, that refusal may be admissible in a subsequent prosecution, and your license, permit, or privilege to operate a motor vehicle will be automatically suspended for not less than ninety (90) days, whether or not you are subsequently prosecuted as a result of the test.

If you give a specimen designated by me, and an analysis of the specimen shows that you have an alcohol concentration of a level specified in Section 49.01, Texas Penal Code, your license, permit, or privilege to operate a motor vehicle will be automatically suspended for not less than sixty (60) days, whether or not you are subsequently prosecuted as a result of the arrest.

Further, you have the right within fifteen (15) days after being served with notice of suspension or a denial of a license, permit, or privilege to request a hearing on the suspension or denial.

The appellant argues the warnings were incorrect because the statute requires a blood alcohol level of 0.10 *at the time of driving.* He says the warnings contradict the law allowing the automatic suspension of a driver's license. He claims a driver whose blood alcohol level is 0.10 or more *at the time of a blood test* cannot have his license suspended, but instead the State must prove his blood alcohol level was 0.10 or more *at the time of driving.*

■ Section 49.04 of the Penal Code makes it a crime to operate a motor vehicle in a public place while intoxicated; section 724.015 of the Transportation Code requires a person suspected of DWI be warned that his license will be suspended automatically if either he refuses to take a breath or blood test upon request or a test indicates his blood alcohol level is 0.10 or greater. TEX.PENAL CODE § 49.04(a) (1998); TEX.TRANSP.CODE § 724.015(1–3) (1997);[2] *Lane v. State,* 951 S.W.2d 242, 243 (Tex.App.—Austin 1997, no pet.). Even though the statutory warning

read to the appellant informed him his license would be suspended if he had a blood alcohol level of 0.10 or greater *at the time of testing* instead of at the time he was driving, the warning was not void. If anything, the warning received by the appellant gave him more latitude than the statutes require. When a person's blood alcohol level is tested some time after he is stopped, and the test results show his blood alcohol level is 0.10, that person's level was generally 0.10 or higher at the time he drove a motor vehicle.

■ When interpreting a statute, we seek to carry out the intent of the legislature. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991). We first focus on and attempt to apply the plain language of the statute. *Id.* However, we will not apply the literal language in cases when application of the plain language would lead to an absurd result. *Id.* In such a case, we need not apply the literal language, but will attempt to interpret the statute to effect its intended result. *Id.* at 785–86.

In this case, the appellant argues we should hold the statutory warning he received is void because it did not track the literal language of sections 49.01 and 49.04. However, if the warning used the literal language of the DWI statutes, a defendant could argue that any breath test results taken at any time after he stopped driving were inapplicable to the crime of DWI, because the test was not taken at the time he drove. Such an application would be absurd.

A person cannot realistically be given a breath or blood test *while* he is driving. A police officer must first observe a defendant driving, then develop probable cause to stop him, then observe signs that he might be intoxicated, and then begin a DWI investigation, during which a breath or blood test is requested. Furthermore, if a person is stopped while driving, his blood alcohol level is tested some time later, and test results show his blood alcohol level is 0.10, in most cases, his level was 0.10 or greater at the time he drove a motor vehicle.

---

2. Amended by Act of June 1, 1997, 75th Leg., R.S., ch. 1013, § 34, 1997 Tex.Gen.Laws 3683, 3698.

The warnings the appellant received substantially complied with the language and purpose of the statute. *Cf. Penry v. State,* 691 S.W.2d 636, 643 (Tex.Crim.App.1985) (defendant claimed discrepancy between warnings and statute rendered confession inadmissible; held, confession admissible because warnings substantially complied with Tex.Code Crim.P. art. 38.22); *Richard v. State,* 788 S.W.2d 917, 920 (Tex.App.—Houston [1st Dist.] 1990, no pet.) (if admonishments substantially comply with but do not precisely track Tex.Code Crim.P. art. 26.13, guilty plea not void unless defendant shows he was unaware of consequences of plea or was misled or harmed).

The appellant does not argue his alcohol level was rising on the way to the jail and therefore was higher at the time he was tested than at the time he drove. He does not argue he did not understand the consequences of refusing or failing a breath test. He does not argue he was somehow tricked or coerced into taking the test by the language of the warning. We hold that the fact that the appellant's statutory warning stated his license would be suspended if he had a blood alcohol level of 0.10 or greater at the time of testing, and not at the time he was driving, constitutes substantial compliance. The trial court did not err in refusing the appellant's motion to suppress on this basis.

We overrule point of error six in cause number 01–97–00631–CR and point of error five in cause number 01–97–00632–CR.

### Constitutionality of § 724.061

In point of error five in cause number 01–97–00631–CR and point of error four in cause number 01–97–00632–CR, the appellant claims section 724.061 of the Transportation Code is unconstitutional.

 In reviewing a statute's constitutionality, we presume the statute is valid and that the legislature was not unreasonable or arbitrary when it enacted the statute. *Ex*

*parte Granviel,* 561 S.W.2d 503, 511 (Tex. Crim.App.1978); *Raitano v. Texas Dep't of Public Safety,* 860 S.W.2d 549, 550 (Tex. App.—Houston [1st Dist.] 1993, writ ref'd). The individual challenging the statute bears the burden of showing it is unconstitutional. *Granviel,* 561 S.W.2d at 511; *Raitano,* 860 S.W.2d at 550.

Under Texas law, a person arrested for suspicion of DWI is deemed to have consented to taking a breath or blood test to determine his blood alcohol level. Tex.Transp. Code § 724.011(a) (1997);[3] *Texas Dep't of Public Safety v. Watson,* 945 S.W.2d 262, 266 (Tex.App.—Houston [1st Dist.] 1997, no pet.).[4] Testimony concerning a person's refusal to take a breathalyzer test is made admissible by section 724.061, which provides:

A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial.

Tex.Transp.Code § 724.061 (1997).

#### 1. Is the statute unconstitutionally vague?

The appellant claims the statute is unconstitutionally vague and void because of the word "may" in the phrase "may be introduced into evidence." Tex.Transp.Code § 724.061 (1997). The appellant does not state how the use of the word "may" could lead to an unconstitutional application, nor does he explain how the statute is unconstitutionally vague, other than to say it *might* be interpreted and applied differently. We disagree.

 If a statute can be construed two different ways, one of which sustains its validity, we will apply the interpretation that sustains its validity. *Granviel,* 561 S.W.2d at 511. The use of the word "may" in the phrase "may be admissible" does not render section 724.061 vague. Instead, the word

3. Amended by Act of June 1, 1997, 75th Leg., R.S., ch. 1013, § 32, 1997 Tex.Gen.Laws 3683, 3698.

4. Under certain circumstances, the police may take a breath or blood specimen even without the

consent of the person to be tested. Tex.Transp. Code § 724.012(b) (1997) (*amended by* Act of June 1, 1997, 75th Leg., R.S., ch. 1013, § 33, 1997 Tex.Gen.Laws 3683, 3698); *Watson,* 945 S.W.2d at 266 n. 5.

"may" gives the trial court the discretion to consider the circumstances on a case-by-case basis in determining when a refusal should be allowed in as evidence. A refusal to take the test, like any other evidence, can be admitted as relevant evidence, at the trial court's discretion, unless a defendant can overcome the presumption of admissibility by showing undue prejudice or the like. *See* TEX.R.EVID. 403;[5] *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App.1997) (defendant must show prejudicial effect outweighs probative value); *Fuller v. State*, 829 S.W.2d 191, 206 (Tex.Crim.App.1992) (same). We hold the statute is not unconstitutionally vague.

### 2. Must State show why appellant refused test?

The appellant claims the statute is unconstitutional because it allows the admission of refusal evidence without requiring a showing of relevance.[6] We disagree.

 The appellant's argument that the State should be required to show relevance is not a constitutional challenge. It is a challenge to the relevance of refusal evidence.[7] To be introduced at trial, evidence must be relevant to the offense for which the defendant is being prosecuted. *Johnson v. State*, 698 S.W.2d 154, 160 (Tex.Crim.App.1985); *Washington v. State*, 881 S.W.2d 187, 190

(Tex.App.—Houston [1st Dist.] 1994, no pet.). Generally, any relevant evidence is admissible.[8] TEX.R.EVID. 402;[9] *Soffar v. State*, 742 S.W.2d 371, 377 (Tex.Crim.App.1987); *Escobar v. State*, 825 S.W.2d 254, 255 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). By enacting the statute, the legislature indicated that evidence of a refused breath test is relevant at a DWI trial.[10] The legislature indicated such refusal evidence is relevant and should be admissible without requiring a showing of why a defendant refused a breath test.

The admissibility of refusal evidence is not predicated on the reason for the refusal. *Jamail v. State*, 787 S.W.2d 380, 382 (Tex.Crim.App.1990), *overruled in part on other grounds, Hardie v. State*, 807 S.W.2d 319, 322 (Tex.Crim.App.1991); *Ex parte Jamail*, 904 S.W.2d 862, 865 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). Under the statute, the reason a person refuses to take the breath test is not relevant to the State's case. *Jamail*, 787 S.W.2d at 383; *see Ex parte Jamail*, 904 S.W.2d at 865. In fact, evidence of why a breath test was refused is technically irrelevant and inadmissible in the State's case, but relevant and admissible for the defense. *Jamail*, 787 S.W.2d at 383.

Holding the State must show why a defendant refuses a breath test would effectively bar the State from using refusal evidence. If

---

**5.** The criminal and civil rules of evidence were unified effective March 1, 1998, and no change was made to rule 403. *See* Order Approving the Texas Rules of Evidence, Misc. Docket No. 97–9184 (Tex. Oct. 20, 1997). The Texas Rules of Criminal Evidence would have been applied at trial.

**6.** The appellant argues the State sought to introduce his refusal as a tacit admission that he knew he was too intoxicated to pass the breath test. This is not a case of a tacit or adopted admission. Instead, it is a voluntary, non-coerced act which carries an inference of guilt. *See South Dakota v. Neville*, 459 U.S. 553, 564, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983).

**7.** In *Neville*, the United States Supreme Court held that evidence of a refused breath test was admissible against a DWI defendant. *Neville*, 459 U.S. at 564, 103 S.Ct. at 923. The Court held the refusal to take a lawfully requested blood alcohol test is not a coerced act and is not protected by the privilege against self-incrimina-

tion. *Id.* It further held that if a defendant is warned that his license will be suspended if he refuses a test, use of refusal evidence, *even if a defendant is not warned that such evidence may be admitted against him in a later trial*, does not violate due process. *Id.*, 459 U.S. at 566, 103 S.Ct. at 924.

**8.** Relevant evidence may be excluded if its relevance is outweighed by a danger it will unfairly prejudice, confuse, or mislead the jury or if its inclusion will result in undue delay or if it is needlessly cumulative. TEX.R.EVID. 403.

**9.** No change was made to rule 402 when the civil and criminal rules of evidence were unified. *See supra* note 5.

**10.** By his own arguments, the appellant seems to admit that refusal evidence is relevant, *i.e.*, because it raises an inference of guilt. His real concern is that the inference of guilt is strong and very prejudicial to a defendant in a DWI prosecution.

a defendant chose not to testify at his trial, the State could not ask him why he refused the tests and so could not make the showing that the appellant would require. On the other hand, if police officers asked defendants why they refused a breath test at the time of the refusals, those answers could be excluded as violating the defendants' right to counsel or right to remain silent. Under the appellant's argument, refusal evidence would be inadmissible without a blurted out explanation, such as in *Neville,* where Neville said, "I'm too drunk, I won't pass the test." *South Dakota v. Neville,* 459 U.S. 553, 561–62, 103 S.Ct. 916, 921, 74 L.Ed.2d 748 (1983). Such a holding would effectively gut the statute.

We hold the State is not required to make a predicate showing of what a defendant was thinking as he refused the breath test.

### 3. Must State prove accuracy of testing instrument?

The appellant argues that before the State can use evidence of his refusal to take a breath test, it should be required to show the breath testing equipment is objectively reliable. He claims the regulations governing instruments used to test alcohol levels do not require an instrument to be accurate for testing a human's blood alcohol content. We disagree.

Section 19.1 of the Administrative Code governs the certification of a breath test instrument. 37 TEX.ADMIN.CODE § 19.1 (1998). Section 19.1 requires an instrument's accuracy be demonstrated by testing a reference sample to make sure the instrument reads the proper alcohol level, between 0.01 grams of alcohol per 210 liters of breath. 37 TEX.ADMIN.CODE § 19.1(b)(3) (1998). The regulations also allow an instrument to be put to any other tests that are deemed necessary to evaluate the instrument's accuracy and "practical[ity] and reliabil[ity] for traffic law enforcement purposes." 37 TEX.ADMIN.CODE § 19.1(b)(5) (1998).

While there may be controversy over the accuracy of breath test instruments, they are widely used and relied upon. A certified breath test instrument is presum-

ably reliable and accurate for the purposes for which it is designed, regardless of boilerplate warranty language provided by the manufacturer. If a defendant wishes to attack the reliability of breath testing as a rule or the reliability of a specific testing instrument, he may do so.

We overrule the appellant's claim that the statute is unconstitutional because it does not predicate the admissibility of refusal evidence on a showing that the breath test instrument was reliable and accurate.

We overrule point of error five in cause number 01–97–00631–CR and point of error four in cause number 01–97–00632–CR.

We affirm the trial court's judgments.