

# NUMBER 13-14-00332-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

TEXAS DEPARTMENT OF PUBLIC SAFETY,               Appellant,

v.

AMIR TURCIOS,                                     Appellee.

## On appeal from the County Court at Law No. 7 of Hidalgo County, Texas.

## MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Rodriguez and Perkes
## Memorandum Opinion by Chief Justice Valdez

Appellant Texas Department of Public Safety (Department) appeals the trial court's order reversing the suspension of appellee Amir Turcios' driver's license for 180 days following his arrest for driving while intoxicated. We reverse the trial court's order and render, reinstating the suspension of Turcios' driver's license.

# I.    Background

Shortly before midnight on December 22, 2013, a police officer stopped Turcios for driving with a defective right front headlight.  Upon making contact with Turcios, the police officer detected signs of intoxication and administered field sobriety tests, which, in the officer's opinion, Turcios failed.  During the police investigation, Turcios admitted that he consumed vodka and marijuana.  Based on his investigation, the officer arrested Turcios for driving while intoxicated.  Thereafter, the officer requested that Turcios provide a blood specimen; Turcios refused.

## A. Administrative Hearing

Because Turcios refused to provide a blood specimen, the Department sent a letter notifying him that his driver's license would be suspended for 180 days.  The notice letter specifically alleged that on or about December 22, 2013:

1.  reasonable suspicion or probable cause existed to stop or arrest [Turcios].

2.  probable cause existed to believe that [Turcios] was operating a motor vehicle in a public place while intoxicated. . .

3.  [Turcios] was placed under arrest by the officer and was requested to submit to the taking of a specimen.

4.   [Turcios] refused to submit to the taking of a specimen on [the] request of the officer.

Thereafter, an administrative law judge (ALJ) was appointed to determine whether Turcios' driver's license should be suspended in accordance with Texas law.  At an administrative hearing before the ALJ, the Department introduced the police officer's report, which contained the facts recited in the background section above.  Turcios did not object to the admissibility of the police officer's report.

2

After the ALJ received the police report in evidence, Turcios testified on his own behalf. Specifically, Turcios testified that: (1) his vehicle's headlight was "out"; (2) he told the police officer at the scene of the traffic stop that he had consumed vodka and marijuana; (3) he believed that he was "definitely" intoxicated by the vodka and marijuana; (4) he blew into a "breathalyzer" at the scene of the traffic stop; and (5) he refused to provide a blood specimen.

After considering the evidence, the ALJ ordered that Turcios' driver's license be suspended for 180 days pursuant to Texas Transportation Code section 724.035. *See* TEX. TRANSP. CODE ANN. § 724.035(a) (West, Westlaw through 2015 R.S.) (authorizing a 180-day license suspension for a person who refuses to provide a breath or blood specimen after being arrested for driving while intoxicated). In support of its decision, the ALJ entered the following findings of fact:

1. [On December 22, 2013] . . . reasonable suspicion existed to stop [Turcios] in that . . . [t]he officer observed [Turcios'] vehicle had a non-working from [sic] headlight.

2. On the same day, probable cause [existed] to arrest [Turcios for driving while intoxicated] because . . . [the officer] observed [that Turcios] had an odor of alcohol, slurred speech and he admitted [to] smoking marijuana. . . .

3. [Turcios] was placed under arrest and was properly asked to submit a specimen of breath.

4. After being requested to submit a specimen of breath, [Turcios] refused.

## B. Appeal to the County Court

Turcios appealed the ALJ's suspension order to the county court, raising the following three main issues in his written and oral argument: (1) there was no evidence that his vehicle had a "non-working *from* headlight" as the ALJ expressly stated in its first

3

finding above; (2) there was no evidence that he refused to provide a "breath" specimen as the ALJ expressly stated in its fourth finding above; and (3) the ALJ's decision to suspend his driver's license violates his constitutional rights under *Missouri v. McNeely*. 133 S. Ct. 1552 (2013).

After considering these arguments, the county court reversed the ALJ's decision. Specifically, the county court found that:

> at least one of [Turcios'] said listed "basis of appeal"[1] is true and [Turcios'] substantial rights and/or constitutional rights have been prejudiced by acts of the [ALJ] and [the Department]. The Court also finds that there was no good reason for [the Department's] failure to present more evidence at the time of the administrative hearing; and that the [ALJ's decision]: (1) exceed[s] statutory authority, (2) [is] made upon unlawful procedure, (3) [is] affected by error of law, (4) [is] not reasonably supported by substantial evidence in view of all the evidence in the record, and (5) [is] arbitrary, capricious, characterized by abuse of discretion or clearly unwarranted exercise of discretion.

> Accordingly, it is therefore ORDERED, ADJUDGED AND DECREED by the Court that the [ALJ's] affirmative findings, conclusions, decision and order be and the same are hereby in all things set aside and reversed; [the Department's] order of suspension of [Turcios' driving license] is in all things hereby set aside and reversed; [Turcios'] driving privileges are restored effective immediately and [his driver's license] shall and must be returned as soon as possible to him by [the Department.]

This appeal by the Department followed.

## II. Discussion

By two issues, which we treat as one, the Department contends that the county court erred in reversing the ALJ's suspension order.

---

[1] Turcios' written "basis of appeal" spans nine pages; in substance, however, Turcios' written and oral appeal to the county court raised the three issues referenced above.

4

## A. Applicable Law and Standard of Review

A person whose driver's license is suspended for refusing to provide a specimen after arrest for driving while intoxicated may challenge such suspension at an administrative hearing. *See* TEX. TRANSP. CODE ANN. § 724.041(a), (d) (West, Westlaw through 2015 R.S.). The issues to be decided at the hearing are whether:

(1) reasonable suspicion or probable cause existed to stop or arrest the person;

(2) probable cause existed to believe that the person was [operating a motor vehicle in a public place while intoxicated];

(3) the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and

(4) the person refused to submit to the taking of a specimen on request of the officer.

*Id.* § 724.042. At the administrative hearing, the Department has the burden to prove these issues by a preponderance of the evidence. *See Dep't of Pub. Safety v. Hirschman*, 169 S.W.3d 331, 335–37 (Tex. App.—Waco 2005, pet. denied). If the ALJ finds that the Department proved each issue, the license suspension is sustained. *Id.*

As happened in this case, the ALJ's license suspension order may be appealed to a county court. *Id.* However, "[t]he burden for overturning an agency ruling is quite formidable." *Tex. Dep't of Pub. Safety v. Pucek*, 22 S.W.3d 63, 67 (Tex. App.—Corpus Christi 2000, no pet.). The administrative decision is presumed to be supported by substantial evidence, and the burden is on the appellant to prove that it should be reversed. *See City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 185 (Tex. 1994). Consequently, the county court may not reverse the ALJ's decision unless the

5

appellant demonstrates that his substantial rights were prejudiced because the ALJ's administrative decision is:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Hirschman*, 169 S.W.3d at 335–37 (citing TEX. GOV'T CODE ANN. § 2001.174 (West, Westlaw through 2015 R.S.)).  Thus, to reverse the ALJ's decision, the county court must conclude:  (1) that the ALJ's decision was erroneous for one of the reasons enumerated in subsections (A) through (F) above; and (2) that substantial rights of the appellant have thereby been prejudiced.  *See Tex. Dep't of Pub. Safety v. Cantu*, 944 S.W.2d 493, 495 (Tex. App.—Houston [14th Dist.] 1997, no writ).  The ALJ is the sole judge of the weight and credibility of the evidence.  *See Hirschman*, 169 S.W.3d at 335–37.  A county court may not substitute its judgment for that of the ALJ as to the weight of the evidence.  *Id.*

We review de novo the county court's decision to reverse the ALJ's decision.  *Id.* As such, we review the ALJ's decision without affording any deference to the county court's determination.  *Id.*

## B. Analysis

In view of the forgoing, we now analyze whether the ALJ's decision to suspend Turcios' driver's license was erroneous for any of the reasons enumerated in subsections (A) through (F), and, if so, whether any error prejudiced Turcios' substantial rights.

### 1. Reasonable Suspicion for Traffic Stop

At oral argument before the county court, Turcios argued that the ALJ's finding regarding reasonable suspicion for the traffic stop lacked substantial evidence. However, the police officer's written report indicates that Turcios was pulled over for driving with a "defective front right headlight." Furthermore, Turcios admitted at the administrative hearing that his vehicle's headlight was "out." Driving with only one headlight at night is a traffic offense that provides reasonable suspicion for a traffic stop. *See* TEX. TRANSP. CODE ANN. § 547.302 (West Westlaw through 2015 R.S.) (providing that at least one lighted lamp shall be displayed on each side of the front of a motor vehicle); *see also Francis v. State*, 425 S.W.3d 554, 556 (Tex. App.—Fort Worth 2014, no pet.)*; Williams v. State*, No. 04-02-00747-CR, 2003 WL 21658529, at *1 (Tex. App.—San Antonio July 16, 2003, pet. ref'd) (mem. op., not designated for publication). We conclude that the assertions contained in the officer's report, coupled with Turcios' own admission, constitutes substantial evidence to support the ALJ's finding regarding reasonable suspicion for the traffic stop.

Nonetheless, Turcios asked the county court to reverse the ALJ's decision based on the typographical error "*from* headlight" contained in the ALJ's first written finding of fact. Relying on this error, Turcios argued that there was no evidence that his "*from* headlight" was not working on the night of his arrest. However, a county court is not

7

authorized to reverse an ALJ decision unless the decision prejudices the appellant's substantial rights. *See Cantu*, 944 S.W.2d at 495. Regardless of the ALJ's error, the record contains substantial evidence to support a finding of reasonable suspicion for the traffic stop. As such, we conclude—as did the courts in *Alford*, *Blankenbeker*, and *Segrest* on analogous facts—that the typographical error "*from* headlight" contained in the ALJ's written findings did not prejudice Turcios' substantial rights. *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (concluding there was substantial evidence to support ALJ's decision even though the ALJ referenced the wrong citation for the implied consent statute in its findings); *Blankenbeker v. Tex. Dep't of Pub. Safety*, 990 S.W.2d 813, 818–19 (Tex. App.—Austin 1999, pet. denied) (concluding that the driver's substantial rights were not prejudiced when the ALJ mistakenly referenced the wrong offense-date in its findings); *see also Tex. Dep't of Pub. Safety v. Segrest*, No. 03-02-00671-CV, 2003 WL 22348841, at *4 (Tex. App.—Austin Oct. 16, 2003, no pet.) (mem. op.) (concluding that the driver's substantial rights were not prejudiced when the ALJ mistakenly referenced the wrong officer in finding that there was reasonable suspicion to stop the driver). Therefore, the county court erred to the extent that it reversed the ALJ's finding that reasonable suspicion supported the traffic stop.

### 2. Refusal

At oral argument before the county court, Turcios also argued that the ALJ's fourth finding of fact regarding his alleged refusal to provide a specimen lacked substantial evidence. However, the police officer's written report indicates that Turcios refused to provide a blood specimen. Furthermore, Turcios admitted at the administrative hearing that he refused to provide a blood specimen. We conclude that the assertions contained

8

in the police officer's report, coupled with Turcios' own admission, constitutes substantial evidence to support the ALJ's finding regarding Turcios' refusal to provide a specimen.

Nonetheless, Turcios argued to the county court that, although he refused to provide a blood specimen, there was no evidence to support the ALJ's fourth written finding that he refused to provide a "breath" specimen. Having reviewed the record, we find no evidence to support the ALJ's express finding that Turcios refused to provide a "breath" specimen. Thus, the ALJ was incorrect in making that finding. As previously noted, however, a county court is not authorized to reverse the ALJ's decision unless the decision prejudices the appellant's substantial rights. *See Cantu*, 944 S.W.2d at 495. Under Texas law, a driver's refusal to provide either a breath specimen *or* a blood specimen is grounds for suspension, and the ALJ is not required to specify the type of specimen refused. *See* TEX. TRANSP. CODE ANN. § 724.011(a) (West Westlaw through 2015 R.S.); *Tex. Dep't of Pub. Safety v. Kusenberger*, 29 S.W.3d 154, 156–57 (Tex. App.—San Antonio 2000, no pet.). Furthermore, the length and severity of a license suspension is the same regardless of which type of specimen is refused. *See* TEX. TRANSP. CODE ANN. § 724.035(a). Here, although the ALJ's finding concerning the type of specimen refused was incorrect, it is undisputed that Turcios refused to provide a blood specimen, which was enough to support the ALJ's suspension. *See* TEX. TRANSP. CODE ANN. §§ 724.011(a), 724.035(a). We therefore conclude that ALJ's written mistake as to the type of specimen that Turcios refused did not prejudice his substantial rights. See *Alford*, 209 S.W.3d at 103; *Blankenbeker*, 990 S.W.2d at 818–19; *Kusenberger*, 29 S.W.3d at 157 (affirming the ALJ's finding that the driver refused to provide a specimen even though the ALJ mistakenly found that the driver refused to provide a "breath"

9

specimen when the evidentiary record supported a finding that the driver refused to provide a "blood" specimen); *see also Segrest*, 2003 WL 22348841, at *4.

Turcios also argued that the ALJ could not validly suspend his driver's license for refusing to provide a blood specimen because he initially provided a breath specimen at the scene of the traffic stop; according to Turcios, because he provided one specimen, he was allowed to refuse a second specimen without risking suspension. However, a person arrested for driving while intoxicated "is deemed to have consented . . . to submit to *one or more* specimens of the person's breath or blood." TEX. TRANSP. CODE ANN. § 724.011 (emphasis added); *see Kerr v. Tex. Dep't of Pub. Safety*, 973 S.W.2d 732, 735–36 (Tex. App.—Texarkana 1998, no pet.). As such, a driver's initial consent to provide a specimen does not invalidate a license suspension premised on the driver's refusal to provide a second specimen. *See Tex. Dep't of Pub. Safety v. Bond*, 955 S.W.2d 441, 447 (Tex. App.—Fort Worth 1997, no pet.) (concluding that even if compliance with the intoximeter test constituted the giving of a specimen under chapter 724, the motorist could not have refused a second specimen without risking the suspension of his license); *Tex. Dep't of Pub. Safety v. Watson*, 945 S.W.2d 262, 267 (Tex. App.—Houston [1st Dist.] 1997, no writ) ("Even if the [portable breath test] constituted the giving of a specimen under chapter 724, Watson did not have the luxury of refusing a second specimen under chapter 724 without the attendant risk of license suspension."). Because Turcios refused to provide a blood sample, his license was subject to suspension. Therefore, the county court erred to the extent that it reversed the ALJ's finding that Turcios refused to provide a specimen. *See Bond*, 955 S.W.2d at 447; *Watson*, 945 S.W.2d at 267.

### 3. *Missouri v. McNeely*

Finally, at oral argument before the county court, Turcios argued that the ALJ's decision to suspend his driver's license violated his constitutional rights under *Missouri v. McNeely*. The entirety of Turcios' written appeal to the county court on this issue is as follows:

> Concepts of constitutional fundamental fairness prohibit the [ALJ from suspending Turcios' driver's license] because [transportation code section] 724.012(b) is unconstitutional in light of [*Missouri v. McNeely*] because [section 724.012(b)] provides for implied consent to an unwarranted blood draw, which penalized [Turcios] for exercising his constitutional right to refuse drawing of his blood without a warrant being issued.

Turcios' reliance on *Missouri v. McNeely* is misplaced.

First, *Missouri v. McNeely* did not, as Turcios argues, recognize a constitutional right to refuse a blood draw; rather, the case clarified when, and under what circumstances, the Fourth Amendment forbids the State to draw one's blood without a warrant. *See* 133 S. Ct. at 1559–63.

In *Missouri v. McNeely*, the State arrested the defendant for driving while intoxicated, searched him without a warrant and without his consent, obtained blood evidence from the search, and sought to convict him in a criminal trial using the blood evidence. 133 S. Ct. at 1558. The question for the Supreme Court concerned the admissibility of the blood evidence—specifically, "whether the natural [dissipation] of alcohol in the bloodstream presents a per se exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *Id.* at 1556. The Supreme Court answered that no such per se exception to the warrant requirement exists in all drunk driving cases. *See id.* at 1568 (holding that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does

11

not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant."). Thus, *Missouri v. McNeely* did not actually address the question that Turcios claims it answered—i.e., whether the Fourth Amendment forbids the State to suspend one's driver's license for refusing to provide a blood specimen.

Furthermore, language in the plurality portion of *Missouri v. McNeely* strongly suggests that the Supreme Court did not intend to foreclose the availability of administrative license suspensions as a legal tool to enforce drunk-driving laws. In holding that the Fourth Amendment forbids warrantless, non-consensual, and non-exigent blood draws, Justice Sotomayor specifically noted that:

> As an initial matter, States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC [blood alcohol content] evidence without undertaking warrantless nonconsensual blood draws. For example, all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk driving offense. *See* NHTSA Review 173; *supra*, at 1556 (describing Missouri's implied consent law). Such laws impose significant consequences when a motorist withdraws consent; *typically the motorist's driver's license is immediately suspended or revoked*[.]

*Id.* at 1565–66 (emphasis added). Thus, although *Missouri v. McNeely* does not directly address whether the Fourth Amendment forbids the State to administratively suspend one's driver's license for refusing a blood draw, there is a strong suggestion in the plurality opinion that a suspension premised upon such refusal is a constitutionally permissible "legal tool" to further the State's interest in preventing drunk-driving. *Id.* at 1566.[2]

---

[2] We note that Turcios supplemented his initial brief to inform this Court of the following three cases that were granted certiorari by the United States Supreme Court on December 11, 2015 and argued on April 20, 2016: *Beylund v. Levi*, *Minnesota v. Bernard*, and *North Dakota v. Birchfield*. *See Beylund*, 859 N.W.2d 403, 406 (N.D. 2015), cert. granted, 136 S. Ct. 614 (Dec. 11, 2015) (concluding that state's criminal refusal statute did not violate Beylund's constitutional rights); *Bernard*, 859 N.W.2d 762 (Minn. 2015), cert. granted, 136 S. Ct. 615 (Dec. 11, 2015) (same); *Birchfield*, 858 N.W.2d 302 (N.D. 2015), cert. granted, 136 S. Ct. 614 (Dec. 11, 2015) (same). These cases, however, are distinguishable from the present case because the statutes at issue in *Beylund*, *Bernard,* and *Birchfield* make it a criminal offense to refuse to

Finally, as noted by the Department, *Missouri v. McNeely* is borne out of a different set of facts, which we believe makes the case inapposite here. In *Missouri v. McNeely*, the State forcibly searched the defendant and obtained blood evidence. In other words, there was actually a Fourth Amendment search, which the Court characterized as one that "involved a compelled physical intrusion beneath [the defendant's] skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation." *See id.* at 1558. The Supreme Court observed that "[s]uch an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *Id.* (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)). Thus, the Supreme Court invalidated warrantless, non-consensual, and non-exigent blood draws because the bodily invasion itself implicated highly personal privacy expectations of the defendant. Here, in contrast, the State never actually searched Turcios and never obtained any blood evidence; instead, the police officer asked Turcios to provide a blood specimen, Turcios refused, and the police officer abided Turcios' refusal. By refusing the blood draw, Turcios effectively thwarted the type of bodily invasion that would have potentially triggered the Fourth Amendment protection recognized in *Missouri v. McNeely*—i.e., the protection against a forced blood draw under circumstances that the Fourth Amendment forbids. Because the mere suspension of Turcios' driver's license does not implicate his "most

provide a specimen. *See* MINN. STAT. § 169A.20 (West, Westlaw through 2015 R.S.); N.D. CENT. CODE § 39-08-01 (West, Westlaw through 2015 R.S.); *Beylund*, 859 N.W.2d at 410; *Bernard*, 859 N.W.2d at 765; *Birchfield*, 858 N.W.2d at 304. The Texas statute at issue in this case does not criminalize refusal to provide a specimen. *See* TEX. TRANSP. CODE ANN. § 724.048 (West, Westlaw through 2015 R.S.); *Reynolds v. State*, 4 S.W.3d 13, 21 (Tex. Crim. App. 1999) ("[A license revocation administrative proceeding] is not a 'criminal prosecution' and it is not 'essentially criminal.'"). The Texas statute is a provision that serves the purpose of "protecting public safety by quickly removing drunk drivers from the road." *Mireles v. Tex. Dep't. of Pub. Safety*, 9 S.W.3d 128, 130 (Tex. 1999) (per curiam). And even were the Supreme Court to conclude that criminalizing a refusal is unconstitutional, it would be premature for us to speculate as to how that analysis would impact, if at all, Texas's civil statute.

personal and deep-rooted expectations of privacy," we conclude that *Missouri v. McNeely* is inapposite here. *See id.*

For these reasons, we conclude that the county court erred to the extent that it found that the ALJ's suspension order violated Turcios' constitutional rights under *Missouri v. McNeely*. We sustain the Department's appellate issues.

### III.    Conclusion

We reverse the county court's order and render, reinstating the ALJ's suspension order.


**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
9th day of June, 2016.

14