The STATE of Texas, Appellant,

v.

Meredith Carol WOEHST, Appellee.

No. 01–02–01263–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 16, 2004.

G. David Higginson, Asst. County Atty.,
James Kuboviak, County Atty., Brazos
County, Bryan, for Appellant.

Lane Thibodeaux, Bryan, for Appellee.

Panel consists of Justices TAFT,
KEYES, and BLAND.

## OPINION

TIM TAFT, Justice.

The State of Texas appeals from the
trial court's order granting the motion to
suppress of Meredith Carol Woehst, appel-
lee. Woehst was charged with driving
while intoxicated (DWI). *See* TEX. PEN.
CODE ANN. § 49.04 (Vernon 2003). Woehst
moved to suppress the admission of her
refusal to submit a breath or blood speci-
men and the audio and visual recordings of
her refusal on the ground that they had
been illegally obtained by the reading of
incorrect statutory warnings as to the ef-
fect of her refusal. After a hearing, the
trial court granted the motion and sup-
pressed the evidence. In two issues, the

State argues that the trial court erred in suppressing the evidence because (1) a refusal to take a blood-alcohol test cannot be involuntary or coerced and, therefore, cannot be obtained in violation of law and rendered inadmissible and (2) the only possible effect of the officer's reading the incorrect warning relates to the suspension of Woehst's driver's license, not the admissibility at her DWI trial of her refusal to take the breath test. We affirm.

## Background

On October 4, 2001, College Station Police Officer Miguel Vasquez initiated a traffic stop of Woehst's vehicle and subsequently arrested Woehst for DWI.

The current version of the Texas Transportation Code provides that a person arrested for DWI must be informed that, if the person is 21 years of age or older, submits to the taking of a specimen, and the specimen shows that the person had an alcohol concentration of a level specified by Chapter 49 of the Texas Penal Code, then the person's license to operate a motor vehicle will automatically be suspended for not fewer than 90 days. TEX. TRANSP. CODE ANN. § 724.015(3) (Vernon Supp. 2004–05). A person must also be warned that two specific consequences will result from a refusal to submit to a breath test: (1) the person's driver's license will be suspended automatically for not fewer than 180 days and (2) evidence of the refusal is admissible against the person in court. TEX. TRANSP. CODE ANN. § 724.015(1), (2) (Vernon Supp.2004–05).

At the police station, Officer Vasquez read Woehst a 1999 statutory warning form (1999 DIC–24) informing her of the *outdated* consequences for refusing to provide a blood or breath sample: that her license would be suspended for not fewer than 90 days and that evidence of her refusal would be admissible against her in court. At the time of Woehst's arrest, the 1999 DIC–24 form had already been replaced by a 2001 version. In 2001, the Legislature amended the statute to lengthen the minimum period that a driver's license automatically would be suspended upon refusal to submit to the taking of a specimen to not fewer than 180 days, rather than the previous 90 day minimum suspension. The 2001 statute applied to persons arrested for an offense committed on or after September 1, 2001. *See* TEX. TRANSP. CODE ANN. § 724.015 (Vernon Supp.2004–05). Because Woehst was arrested after September 1, 2001, the Texas Transportation Code required Officer Vasquez to inform Woehst of the consequences set forth in the 2001 statute instead of the 1999 statute. The State stipulated in the trial court that Officer Vasquez had read Woehst the outdated 1999 form.

Woehst moved to suppress the breath-test refusal and the videotaped portions of her refusal on the ground that, had she been given the proper statutory warning, she would have had a stronger incentive to take the breath test. At the hearing on her motion, Woehst argued that Officer Vasquez's failure to provide the correct statutory warnings violated section 724.015 of the Transportation Code and, thus, that her refusal to provide a breath specimen was (1) involuntary and inadmissible under the self-incriminatory provisions of the federal and state constitutions[1] and (2) inadmissible under Texas's exclusionary rule, article 38.23 of the Code of Criminal Procedure.[2] The trial court found in

---

1. U.S. CONST. arts. V, XIV; TEX. CONST. art. I, § 10.

2. Article 38.23(a) provides that "no evidence obtained by an officer or other person in violation of any provisions of the Constitution

Woehst's favor and suppressed the refusal and its recordings.

## Standard of Review

A trial court's ruling on a motion to suppress lies within its discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996). A trial court abuses its discretion if it refuses to suppress evidence that is obtained in violation of the law and that is, therefore, inadmissible under Article 38.23 of the Code of Criminal Procedure. *Erdman v. State*, 861 S.W.2d 890, 893 (Tex.Crim.App.1993).

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000). We give almost total deference to a trial court's determination of historical facts, while we conduct a de novo review of a trial court's application of the law to those facts. *Id.* (citing *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997)). During a motion-to-suppress hearing, a trial court is the sole trier of fact; accordingly, the trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000); *King v. State*, 35 S.W.3d 740, 742 (Tex. App.-Houston [1st Dist.] 2000, no pet.). When no findings of fact are filed, we must view the evidence in the light most favorable to the ruling and sustain the decision if it is correct on any applicable theory of the law. *Ross*, 32 S.W.3d at 855–56; *King*, 35 S.W.3d at 742. When reviewing the rul-

ing, we must consider only whether the trial court improperly applied the law to the facts. *Porter v. State*, 938 S.W.2d 725, 727 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd). If any basis for the trial court's ruling is correct, its order to suppress must be upheld. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

## Exclusion of Breath–Test Refusal

In its first issue, the State contends that (1) Texas's exclusionary statute, article 38.23(a) of the Code of Criminal Procedure, requires the exclusion only of illegally obtained evidence; (2) the refusal to give a breath specimen would be obtained illegally only if it were involuntary; and (3) a refusal to give a breath specimen cannot be involuntary unless it is coerced, and it cannot be coerced. Therefore, the State contends that Woehst's refusal should not have been suppressed. *See* Tex.Code Crim. Proc. Ann. art.38.23(a) (Vernon Supp. 2004–05).

In her motion to suppress, Woehst relied primarily on *Erdman v. State*, 861 S.W.2d 890 (Tex.Crim.App.1993).[3] However, Woehst also relied on the effect of the officer's Transportation Code violation regarding the statutory consequences of refusing a breath test and, particularly, the influence that the violation had on Woehst's decision to refuse to take the breath test. The trial court suppressed the refusal based upon both reasons, deciding that it was "required by logic in *Erdman* to exclude the evidence of the

---

or laws of the State of Texas, or Constitution or laws of the United States of America shall be admitted in evidence against the accused." Tex.Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2004–05).

**3.** In *Erdman*, the Court of Criminal Appeals held that a driver's *consent* to a breath test was coerced, and thus improperly obtained

and properly excluded from the evidence, when the officer warned the driver of extra-statutory consequences of a refusal—namely, that the driver would be jailed and charged with DWI if he refused consent—in addition to providing the general statutory warnings contained in the Transportation Code. *Erdman v. State*, 861 S.W.2d 890, 893–94.

warning and of the refusal" **and** that because the "statute's [section 724.015] not followed, then the results should not go in front of the jury."

On appeal, the State first challenges the constitutional basis involving coercion, arguing that *Erdman* does not apply to the uncoerced refusal to take a breath test in a DWI case; rather, the State argues that *Erdman* governs the exclusion of a breath test obtained by coerced consent. Relying primarily on *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the State argues that, unlike consent, a refusal to provide a breath specimen in a DWI case cannot be involuntary.

Second, to the extent the State addresses the statutory basis for suppression of the evidence, the State argues that reading admittedly factually incorrect statutory warnings does not require suppression of Woehst's refusal under any circumstances for the same reason that it does not require suppression on constitutional grounds—the refusal can never be involuntary. The State fails to consider, however, the different analysis that a trial court should undertake to determine admissibility in response to a claim of a statutory violation. *See Pham v. State*, 72 S.W.3d 346, 346 (Tex.Crim.App.2002) (in reversing *Pham v. State*, 36 S.W.3d 199, 204 (Tex. App.-Houston [1st Dist.] 2000), holding that a statutory violation requires a causal-connection analysis in addressing a statutory violation).

■ By law, the Transportation Code requires that a person suspected of having committed the offense of DWI be (1) given the opportunity to take a breath test and (2) warned both that the failure to take the test may be admissible in a subsequent prosecution and that the failure will automatically result in the suspension of his or her driver's license for not fewer than 180 days—the statutory amount of time. TEX.

TRANSP. CODE ANN. § 724.015(1)-(2). These statutory warnings "emphasize the importance of ensuring that the consent is given 'freely and with a correct understanding of the actual statutory consequences of refusal.'" *Sandoval v. State*, 17 S.W.3d 792, 795 (Tex.App.-Austin 2000, pet. ref'd) (citing *Erdman*, 861 S.W.2d at 893). In the present case, Woehst was warned that if she refused to give a specimen, her license would be suspended for not fewer than 90 days. This warning is admittedly factually inaccurate. In reality, her refusal would result in her license's being suspended for not less than 180 days, and the Transportation Code requires that this exact warning be given to a suspect. *See* TEX. TRANSP. CODE ANN. § 724.015(2). The failure to warn Woehst of the accurate statutory consequences of her refusal thus violated the Transportation Code.

■ We acknowledge, however, that "[e]vidence is not 'obtained in violation' of a provision of law if there is no causal connection between the illegal conduct and the acquisition of the evidence." *Gonzales v. State*, 67 S.W.3d 910, 912 (Tex.Crim. App.2002) (citing *Roquemore v. State*, 60 S.W.3d 862, 870 (Tex.Crim.App.2001)); *Schafer v. State*, 95 S.W.3d 452, 455–56 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (holding that trial court did not err in concluding that there was no causal connection between appellant's failure to receive DWI warnings in writing and his decision to submit to breath test). Therefore, in order for Woehst's refusal to be excluded, there must be a causal connection between her refusal and the State's violation of section 724.015(2) of the Transportation Code.

Unlike in *Schafer*, in this case, the trial court concluded that Woehst had demonstrated the existence of a causal connection between her refusal and the officer's viola-

tion of the Transportation Code. *See Gonzales,* 67 S.W.3d at 912. At the pre-trial hearing, the following exchange occurred on direct examination:

> [Defense Counsel]: Had you known that the proper Statutory Warning—if you had a correct understanding of the actual statutory consequences of the refusal, that is, specifically that your license would have been suspended for not 90 days but for actually 180 days, would that have affected your decision whether or not to submit a breath or blood specimen?
>
> [Ms. Woehst]: It would have given me more of an incentive to take the test.
>
> [Defense Counsel]: Why?
>
> [Ms. Woehst]: Just because it's more days of the suspension.
>
> [Defense Counsel]: Okay. Did it act—did it play a role in your decision—and I say that—when I say this, if you had, in fact, been given the correct statutory period of suspension, that would have, in fact, influenced your decision whether to submit a breath specimen or not submit a breath specimen; is that right?
>
> [Ms. Woehst]: Yes, sir.

On cross-examination, Woehst could not explain why the officer's reading of the wrong minimum suspension period affected her.[4] Woehst admitted that she did not feel coerced to refuse to provide a specimen and that she understood the form as it was explained to her. The prosecutor asked Woehst if she wanted the trial court to believe that she would have provided a specimen because the minimums for refusing had increased. Woehst responded affirmatively. On redirect, Woehst also testified that the length of suspension would have had some influence or some effect on her life.

Viewing the evidence in the light most favorable to the trial court's ruling, and deferring to the trial court's determination of facts, especially when they are based, as they are here, on an evaluation of credibility and demeanor, we hold that the trial court did not abuse its discretion in suppressing Woehst's refusal. Woehst established a causal connection, by showing that the officer's misinformation and failure to provide a proper warning had caused her to refuse to consent to the breath test, and the trial court implicitly found her to be credible. Article 38.23 of the Code of Criminal Procedure, therefore, requires exclusion of the refusal evidence. *See Schafer,* 95 S.W.3d at 455, 457; *Jessup v. State,* 935 S.W.2d 508, 511 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd). We disagree with the dissenting opinion, which would find no causal connection as a matter of law absent coercion and thus that a trial court could never find that a refusal was caused by a statutory violation.

We overrule the State's first issue. Because our ruling is dispositive of the appeal, we do not address the State's second issue as to the alleged constitutional violations.

### Conclusion

We affirm the trial court's order granting appellee's motion to suppress.

Justice KEYES, dissenting.

---

**4.** The following exchange occurred:

[Prosecutor]: Ms. Woehst, would your getting to class or going to work or anything like that have been impacted somehow differently had you had a longer suspension than 90 days at the time this was explained to you? How would a 180–day suspension have made an impact on you that would have differed from a 90–day suspension? Do you not have an answer, ma'am?

[Ms. Woehst]: No.

EVELYN V. KEYES, Justice, dissenting.

Because I believe appellant did not meet her burden of proof for exclusion of her refusal to take a breath test, I respectfully dissent.

Woehst argued that, because she was not provided with the correct statutory warnings, in violation of section 724.015 of the Transportation Code, her refusal to provide a breath specimen was involuntary and, therefore, inadmissible under the self-incriminatory provisions of the federal and state constitutions [1] and under Texas's exclusionary rule, article 38.23 of the Texas Code of Criminal Procedure.[2] When reviewing a trial court's ruling on a motion to suppress, we must consider whether the trial court improperly applied the law to the facts. *Porter v. State*, 938 S.W.2d 725, 727 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd). While we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of the law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim.App.2000); *see also Guzman v. State*, 955 S.W.2d 85, 87, 89 (Tex.Crim. App.1997); *Bachick v. State*, 30 S.W.3d 549, 551 (Tex.App.-Fort Worth 2000, pet. ref'd). The majority concludes that Woehst's testimony that the officer's recitation of a superseded version of section 724.015 "influenced" her decision to refuse the test establishes not only *factual* causation, as the trial court found, but also *legal* causation. I disagree.

### Admissibility of Refusal Under Federal and State Constitutions

The Supreme Court has held that a DWI suspect's refusal to take a blood-alcohol test lawfully requested by an officer is not an act coerced by the officer and, therefore, is not protected by the Fifth Amendment and is admissible in a subsequent DWI prosecution. *South Dakota v. Neville*, 459 U.S. 553, 566, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983) (upholding use at trial of defendant's refusal to provide blood sample for DWI testing where defendant was not warned refusal could be used against him at trial as required by state statute). *Id.* 563–64, 103 S.Ct. at 922 (citations omitted).

In *Thomas v. State*, the Texas Court of Criminal Appeals, likewise, held that the admission in a DWI prosecution of a defendant's uncompelled refusal to submit to a breath test does not violate the state constitutional privilege against self-incrimination. 723 S.W.2d 696, 704–05 (Tex.Crim. App.1986) (expressly adopting the reasoning in *Neville* and finding no constitutional violation where defendant was warned his driver's license and driver's privileges could be suspended if he refused breath test, but was not warned his refusal could be used at trial); *see also Miffleton v. State*, 777 S.W.2d 76, 79–80(Tex.Crim.App.1989). *Thomas* defined physical compulsion for purposes of self-incrimination in the DWI context as including "such obvious force as physical torture or extended deprivation of food and water." *Thomas*, 723 S.W.2d at 704. It defined mental compulsion as including "the more subtle force associated with offering a defendant two choices, one of which results in a penalty, punishment or detriment from which the defendant is entitled to be free." *Id.* Both types of com-

---

1. U.S. CONST. arts. V, XIV; TEX. CONST. art. I, § 10.

2. Article 38.23 provides that no evidence obtained by an officer in violation of the Constitution or laws of the State of Texas or Constitution or laws of the United States shall be admitted in evidence against the accused. TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2004).

pulsion, it stated, "remove the element of *voluntariness* from a defendant's decision to incriminate himself." *Id.* (emphasis in original).

The court reasoned that the State could have legitimately relieved the defendant of having to choose between refusing and submitting to the test by compelling him to provide physical evidence of intoxication; instead, it attempted to influence him to provide the evidence using the threat of a penalty for refusing; by refusing, the defendant avoided what might have been compelled, but "accepted those consequences the State could legitimately apply." *Thomas,* 723 S.W.2d at 705. The Court concluded, "Such difficult options do not necessarily create compulsion for a particular choice." *Id.* It held that Article 1, section 10 of the Texas constitution was not violated by the State's failure to warn the defendant that his refusal could be used against him at trial where the other statutory warnings were correct and no compulsion was used to obtain the refusal. *Id.*

Here, Woehst expressly admitted that she did not feel coerced by the officer to refuse to provide a specimen and that she understood the form as it was explained to her.[3] Nor is there any evidence that the officer used physical or mental compulsion as defined in *Thomas* to obtain her refusal. I would hold, therefore, that Woehst's refusal to take a breath test is admissible under both federal and state anti-self-incrimination provisions.

### Admissibility of Refusal Under Texas' Exclusionary Rule

The State also contends that Woehst's refusal should not have been suppressed under Texas' exclusionary statute, article 38.23 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.2004). It argues that (1) article 38.23 requires the exclusion only of illegally obtained evidence; (2) the refusal to give a breath specimen would be illegally obtained only if the refusal were involuntary; (3) a refusal to give a breath specimen cannot be involuntary unless it is coerced by the officer; and (4) Woehst's refusal was not coerced; therefore, it is admissible.

Woehst responds that, just as "a suspect's decision to submit to a breath test must truly be her own, made freely and with a correct understanding of the actual statutory consequences of a refusal," so a refusal to submit to a blood-alcohol test must likewise be voluntary, *i.e.,* "based on a correct understanding of the consequences." She contends that the officer's misstatement of the law caused her refusal to consent to a breath test to be involuntary by depriving her of a full understanding of the consequences of her choice.

Here, as below, Woehst relies primarily on argument by inverse analogy to *Erdman v. State,* 861 S.W.2d 890 (Tex.Crim. App.1993). In *Erdman,* the Court of Criminal Appeals held that a driver's *consent* to a breath test was coerced, and therefore improperly obtained and properly excluded from the evidence under article 38.23 when, in addition to providing the general statutory warnings contained in the Transportation Code, the officer incorrectly warned the driver of extra-statutory consequences of a refusal—namely, that the driver would be jailed and charged

---

**3.** The following exchange occurred:
[Prosecutor]: Did you feel coerced by the officer in any way to refuse to provide a specimen?
[Ms. Woehst]: No, sir.

[Prosecutor]: Did you understand this form as it was explained to you in its entirety at that time?
[Ms. Woehst]: Yes, sir.

with DWI if he refused consent. *Id.* at 891. The Court of Criminal Appeals stated that consent to a breath test "must not be the result of physical or psychological pressures brought to bear by law enforcement officials." *Erdman*, 861 S.W.2d at 893. The test for admissibility of a DWI suspect's blood test results in a DWI prosecution, therefore—like the test for admissibility of a refusal under constitutional standards—is whether the defendant's consent was coerced by warnings that included extra-statutory consequences of a refusal.

Woehst argues that the record of her testimony at the pre-trial hearing demonstrates that the officer's incorrect statement of the law caused her decision to refuse the test. The trial court, as fact finder, found Woehst's testimony to be credible and suppressed the refusal, deciding that it was "required by logic in *Erdman* to exclude the evidence of the warning and of the refusal" and that because the "statute's [section 724.015] not followed, then the results should not go in front of the jury." Like the majority, I defer to the trial court's factual determination that the officer's incorrect warning influenced Woehst's decision to refuse a breath test. However, I would conclude that the court incorrectly applied the law to the facts in determining that Woehst's refusal should be excluded. I do not believe that the logic in *Erdman* requires exclusion of Woehst's refusal, nor do I believe that the mere recitation of an incorrect statutory warning as to a minimum license suspension requires exclusion.

Texas' exclusionary rule provides, "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX.CODE CRIM. PROC. ANN. art. 38.23. Evidence is "obtained . . . in violation of a provision of law," as required by article 38.23, only if there is a causal connection between the illegal conduct and the acquisition of the evidence. *Gonzales v. State*, 67 S.W.3d 910, 912 (Tex. Crim.App.2002) (citing *Roquemore v. State*, 60 S.W.3d 862 (Tex.Crim.App.2001)); *Schafer v. State*, 95 S.W.3d 452, 455 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd). Evidence is not obtained in violation of law if an ordinary person would not consider the evidence to have been obtained *by* that illegality. *See State v. Daugherty*, 931 S.W.2d 268, 269 (Tex.Crim.App.1996). The defendant, therefore, must establish a causal connection between the refusal and the officer's violation of law. *See Schafer*, 95 S.W.3d at 455; *Jessup*, 935 S.W.2d at 511(causal connection not established between officer's failure to give statutory written warnings prior to defendant's refusal to take breath test where warnings were given immediately after refusal); *Harrison v. State*, 766 S.W.2d 600, 605 (Tex.App.-Fort Worth 1989, pet. ref'd) (no error in admitting evidence of refusal where no causal connection established between refusal and fact that civilian had given warnings instead of peace officer). The question, therefore, is what constitutes a causal connection such that the defendant's refusal must be said to have been obtained *by* the illegality.

Although the plain language of section 724.015 requires that a peace officer give the statutory warnings, the failure to do so does not render a refusal automatically inadmissible under article 38.23. *Jessup v. State*, 935 S.W.2d 508, 511 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd); *see also Bachick*, 30 S.W.3d at 552 (not every violation of a Texas law invokes the exclusionary rule). Specifically, "[a]rticle 38.23(a) may not be invoked for statutory violations unrelated to the purpose of the

exclusionary rule." *Id.; see Lane v. State,* 951 S.W.2d 242, 243 (Tex.App.-Austin 1997, no pet.). The purpose of the exclusionary rule is to deter police conduct that could not have reasonably been believed to be lawful by the officers committing the conduct. *Bachick,* 30 S.W.3d at 552–53; *see also Owens v. State,* 861 S.W.2d 419, 420 (Tex.App.-Dallas 1993, no pet.). Therefore, to establish that a DWI suspect's refusal to submit to a breath test was caused by an "illegality," the defendant must show that the police officer who obtained the refusal could not have reasonably believed his conduct to be lawful.

The purpose of section 724.015 in relation to the gathering of evidence for use in a prosecution for DWI is to ensure that a suspect's decision to take or refuse a blood alcohol test is knowing and voluntary. *Lane,* 951 S.W.2d at 243; *Erdman,* 861 S.W.2d at 893 (purpose of statutory warnings is to ensure that defendant's refusal to submit specimen is an informed choice). The statutory warnings "emphasize the importance of ensuring that the consent is given 'freely and with a correct understanding of the actual statutory consequences of refusal.'" *Sandoval v. State,* 17 S.W.3d 792, 795 (Tex.App.-Austin 2000, pet. ref'd) (citing *Erdman,* 861 S.W.2d at 893). The warnings required by section 724.015 "ensure that a person who refuses to give a requested specimen does so with a full understanding of the consequences." *Nebes v. State,* 743 S.W.2d 729, 730 (Tex. App.-Houston [1st Dist.] 1987, no pet.) (construing predecessor statute). It follows that the officer could not have reasonably believed his conduct to be lawful if he obtained Woehst's refusal by depriving her of a knowing and voluntary choice between consenting to the test and refusing. The question, therefore, is what constitutes a knowing and voluntary choice for purposes of Texas' exclusionary statute.

Since Woehst admitted that her refusal to consent to a breath test was not coerced as that term is defined in *Erdman, i.e.,* obtained by coercive extra-statutory warnings, her refusal was not involuntary under *Erdman* and her inverse *Erdman* argument necessarily fails. However, even if Woehst had not admitted that her refusal to submit to a breath test was not coerced, there is no evidence that her refusal to take the test was involuntary as that term has been defined either in *Erdman* or in similar contexts, *i.e.,* obtained by physical or mental coercion. *See Thomas,* 723 S.W.2d at 704 (coercion of refusal under Texas Constitution); *see also Sandoval v. State,* 17 S.W.3d 792, 795 (Tex.App.-Austin 2000, pet ref'd) ("A person's consent to a breath test is voluntary only if it is not the result of physical or psychological pressure. If the officer misstates the law **and** includes extra-statutory consequences of a *refusal to submit* to the breath test, the consent may be considered to have been involuntarily given.") (italics in original; bold added).

I disagree with Woehst and the majority that the incorrect statutory warning in this case was legally sufficient to justify exclusion of her refusal as unknowing and involuntary. The statutory warnings given Woehst were substantially correct. Most importantly, the officer expressly informed Woehst that her refusal to take the test would be admissible; that is, he correctly informed her about the consequences of her refusal for criminal proceedings. In addition, although the statutory warning regarding the minimum license suspension period was outdated and incorrectly warned Woehst about the *minimum* suspension, it did not misinform her that there would be no suspension; nor did the officer assure her that her suspension would be no longer than 90 days—a fact she acknowledged she understood and accepted. Moreover, the outdated statute

not only understated the minimum period of suspension for a refusal to submit to a breath test; it understated the minimum period of suspension for consent to the test as well, maintaining the statutory balance between penalties, *i.e.*, a substantially longer license suspension for a refusal than for consent.

When section 724.015 warnings given were either incomplete, imprecise, or incorrect, but substantially correct, our sister courts—and this court as well—have found a DWI defendant's refusal to be admissible. *See Mody v. State,* 2 S.W.3d 652, 655 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd) (refusal to submit to breath test admissible where oral and written warnings regarding refusal sufficiently complied with section 724.015, even though warnings referred to blood alcohol level of .10 at time of testing, rather than at time of driving); *Moore v. State,* 981 S.W.2d 701, 706 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd) (refusal admissible where defendant was informed license would be suspended if he had blood alcohol level of 0.10 at time of testing, rather than at time of driving); *Gonzalez v. State,* 967 S.W.2d 457, 459 (Tex.App.-Fort Worth 1998, no pet.) (fact that DWI defendant was advised only that his refusal could be used against him "in the future" was broad enough to advise him of the statutory consequences of refusing a breath test.); *Nebes,* 743 S.W.2d at 731 (proof of statutory written warnings not required as predicate to admissibility "of a *voluntarily* taken breath test" under predecessor to section 724.015) (emphasis in original); *but see Texas Dept.*

*of Pub. Safety v. Thomas,* 985 S.W.2d 567, 570 (Tex.App.-Waco 1998, no pet.) (in appeal of license suspension, because police did not adequately warn defendant of all actual, direct, and statutory consequences—specifically, loss of commercial license—substantial statutory right of defendant was violated; thus trial court properly reversed suspension of driver's license).[4] In these cases, as here, although the officer deviated from the statutory warnings, his statement of the warnings was substantially correct, and the officer made no extra-statutory coercive statements.

Moreover, in similar contexts, the Texas courts—including this one—have held that the DWI defendant failed to prove a causal connection between a violation of section 724.015 of the Transportation Code and the obtaining of a defendant's refusal or consent to a blood test. *See Schafer,* 95 S.W.3d at 456–57 (trial court did not err in concluding no causal connection between appellant's failure to receive DWI warnings in writing and his decision to submit to breath test where appellant testified oral warnings given at time were "confused all together," he did not understand them, he did not think he had any choice but to consent, but evidence showed he had blood alcohol concentration of .185); *Rowland,* 983 S.W.2d 58, 60 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd) (appellant failed to show causal connection between evidence obtained, *i.e.*, refusal to take breath test, and failure of peace officer to give timely written warning before refusal where appellant continued to re-

---

**4.** Since the holding in *DTPS v. Thomas* did not involve the suppression of evidence under the Texas exclusionary rule in a criminal prosecution, but only the suspension of the suspect's driver's license in administrative proceedings, it is inapplicable here. However, since our sister courts have declined to follow it in reviewing license suspensions, I

would likewise decline to follow it as authority in defining an involuntary refusal in DWI prosecutions. *See TDPS v. Jackson,* 76 S.W.3d 103 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *see also TDPS v. Struve,* 79 S.W.3d 796 (Tex.App.-Corpus Christi 2002, pet. denied).

fuse test after oral warnings were provided and he had read and signed written warnings); *Lane*, 951 S.W.2d at 243–44 (appellant failed to demonstrate results of breath test were obtained by violation of section 724.015 where there was no evidence that officer's failure to timely hand him printed DIC–24 warning had any impact on decision to take test).

Under the foregoing law, when the statutory warnings given a DWI suspect are substantially correct, the suspect's refusal to consent to a breath test—like consent itself—is involuntary only if it is coerced, *i.e.*, that is, only if the officer made extra-statutory coercive statements or otherwise physically or mentally compelled the refusal; the officer's coercion of the suspect's refusal to consent to the test establishes the causal link between the officer's unlawful conduct and his obtaining the refusal by a violation of law that subjects the refusal to exclusion under article 38.23.

Here, the statutory warning given Woehst correctly informed her that her license would be suspended for *at least* 90 days if she refused a breath test, but less if she consented, and, most importantly, that her refusal might be used against her in a subsequent DWI prosecution; and her refusal was not coerced. Under these circumstances, it is to me a misapprehension of the intent of section 724.015 and of the exclusionary rule to relieve Woehst of the precise risk she knowingly assumed by refusing a breath test—the admissibility of her refusal. I can find no legislative intent to accord greater protection to a DWI defendant's *refusal* to consent to a breath test than *Erdman* affords to a DWI defendant's *consent* to the test.

I would hold that Woehst failed as a matter of law to establish a causal connection between the incorrect statutory warning given her regarding the minimum period for suspension of her license and her refusal to consent to a breath test; therefore, her refusal should have been admitted into evidence. Accordingly, I would reverse and remand.