IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00383-CR

 

The State of Texas,

                                                                                    Appellant

 v.

 

Kenneth Charles Williamson,

                                                                                    Appellee

 

 

 



From the County Court at Law

McLennan County, Texas

Trial Court No. 2003-5271-CR1

 



MEMORANDUM  Opinion



 








            The State appeals an order granting
Kenneth Charles Williamson’s motion to suppress the results of a blood test. 
The State contends in its sole issue that the court abused its discretion by
suppressing the results because no rational trier of fact could have found that
Williamson’s consent to submit a blood specimen for testing was involuntary. 
We will affirm.

 

 

Background

            While on patrol shortly after
midnight, Trooper Patrick Brice noticed a pickup truck which had collided with
a guardrail on the highway shoulder.  Williamson was the sole occupant, seated
in the driver’s seat.  Although he was bleeding because of a head injury, he
told Trooper Brice that the accident happened because he had been cut off by
another driver.  Brice could smell alcohol coming from Williamson’s breath.

            An ambulance transported Williamson to
a hospital.  Brice arrived at the hospital around 1:30 that morning after
clearing the accident scene.  Williamson appeared conscious and alert when
Brice arrived.  Shortly after Brice arrived, he explained to Williamson that he
wanted to take a blood specimen for a “DWI investigation.”  Williamson was
never physically restrained in any way, and, according to Brice, he was not
under arrest.[1] 
Brice testified that Williamson verbally consented to the giving of a blood
specimen after Brice read him the DIC-24 statutory warning form.  Because the
emergency room was busy, Williamson’s blood was not drawn until about four
hours later.

            Brice stayed near Williamson during
his entire hospital stay.  As Brice explained, “I was there for the blood,” and
“whether they’re under arrest or not, we have to stay with them.”  Brice
recalled talking to Williamson’s mother but did not recall talking to his stepfather. 
He denied telling Williamson’s mother and stepfather that Williamson could not
leave the hospital until he gave a blood specimen or that he would go to jail
if he did not give a specimen.

            The nurse who drew the blood testified
that it is standard procedure to ask a patient in law enforcement custody for
verbal consent before drawing a blood specimen and that she would not have
drawn Williamson’s blood without his verbal consent.[2]

            Williamson testified that he did not
have a clear recollection of the events which occurred at the hospital on the
occasion in question.

            Williamson’s mother and stepfather arrived
around 2:00 that morning.  His stepfather Mercer testified that Brice was
concerned “constantly about getting a blood test.”  Brice would not allow him
to accompany Williamson when he was taken to get stitches.  Mercer testified
that Brice insisted that Williamson must either provide a blood specimen or go
to jail.  He characterized Brice’s close proximity to Williams as being like “a
chain around his leg.”

            Williamson’s mother Lauretta testified
that Brice talked to “numerous nurses” about drawing Williamson’s blood and
kept asking when they were going to do so.  She likewise testified that Brice told
them that Williamson must either give a blood specimen or go to jail and that
he stated this directly to Williamson.  According to Lauretta, Brice did not
tell Williamson any of the consequence for refusal but instead merely told him
to sign the consent form.  Lauretta did not believe that he had a choice
regarding the taking of a blood specimen.

Findings of Fact and Conclusions of Law

            The court made numerous findings of
fact and conclusions of law.[3]  To
summarize the court’s findings and conclusions, it chose to believe Mercer’s
and Lauretta’s testimony over Trooper Brice’s.  Accordingly, the court found
that Williamson was under arrest while at the hospital; that Brice informed
Williamson, his mother, and stepfather that he must either provide a blood
specimen or go to jail; and that Brice did not read the statutory warnings (the
DIC-24) to Williamson before obtaining his consent to provide a blood specimen. 
Thus, the court concluded that Williamson’s consent to the taking of a blood
specimen was not voluntary.

Standard of Review

            Williamson’s suppression motion
challenged the voluntariness of his consent under both the federal and state
constitutions.  However, the court found only a “Fourth Amendment violation.”[4] 
Therefore, we use only federal constitutional law to decide this appeal.

            Voluntary consent to a search is a
well-established exception to the warrant and probable cause requirements of
the Fourth Amendment.  See Schneckloth v. Bustamonte, 412 U.S. 218, 248, 93 S. Ct. 2041, 2059, 36 L. Ed. 2d 854 (1973); Montanez v. State, 195 S.W.3d 101,
105 (Tex. Crim. App. 2006); Beeman v. State, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002).  The federal constitution requires the State to prove voluntary
consent by a preponderance of the evidence.  United States v. Matlock,
415 U.S. 164, 177 n.14, 94 S. Ct. 988, 996 n.14, 39 L. Ed. 2d 242 (1974); Montanez,
195 S.W.3d at 105.

            At a suppression hearing, the trial
court is the sole judge of the credibility of witnesses and the weight to be
given their testimony.  Thus, the court may choose to believe or disbelieve any
or all of a witness’s testimony.  “This Court is not at liberty to disturb any
fact finding that is supported by the record.”  Garza v. State, 213
S.W.3d 338, 346 (Tex. Crim. App. 2007).  We view the evidence in the light most
favorable to the court’s ruling.  If the court makes explicit findings of fact,
we must determine whether the evidence supports these findings.  By contrast,
we review the court’s legal ruling de novo unless the court's findings (which
are supported by the evidence) are also dispositive of the legal ruling.  State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

Application

            The court found that Trooper Brice
informed Williamson, his mother, and stepfather that he must either provide a
blood specimen or go to jail and that Brice did not read the statutory warnings
to Williamson before obtaining his consent.  These findings are supported by
the testimony of Williamson, his mother, and his stepfather.[5]

            Consent is involuntary if obtained by
threat of incarceration.  See Erdman v. State, 861 S.W.2d 890, 893-94
(Tex. Crim. App. 1993).  Consent is also involuntary if induced by the
arresting officer’s misstatement of the statutory consequences which flow from
a refusal to provide a specimen.  See State v. Woehst, 175 S.W.3d 329,
332-33 (Tex. App.—Houston [1st Dist.] 2004, no pet.); Franco v. State,
82 S.W.3d 425, 427 (Tex. App.—Austin 2002, pet. ref’d).  We conclude that a
total failure to read the statutory consequences likewise renders a consent
involuntary.

Viewing the evidence in the light most favorable
to the court’s findings, we cannot say that the court abused its discretion by
concluding that Williamson’s consent was involuntary.  Therefore, we overrule
the State’s sole issue and affirm the suppression order.

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief Justice Gray notes that the statement in
the opinion “We conclude that a total
failure to read the statutory consequences likewise renders a consent
involuntary” is unnecessary dicta.  The comment is at best an alternate holding
and I do not join it because it is a global conclusory statement that is not
supported by authority.  I concur in the remainder of the opinion and the
judgment.)

Affirmed

Opinion delivered and
filed January 30, 2008

Do not publish

[CR25]









[1]
              Notwithstanding Brice’s testimony
on this issue, the trial court found that Williamson was under arrest when he
consented to the withdrawal of a blood specimen, and the State does not
challenge this finding.





[2]
              However, the nurse did not
have any personal recollection of having drawn Williamson’s blood or of the
events surrounding his treatment.





[3]
              The court’s findings of fact
and conclusions of law cover six pages and include thirty-seven findings of
fact and thirteen conclusions of law.

 





[4]
              This is stated in the court’s
Conclusion of Law No. 13.





[5]
              The State places great
emphasis on the fact that neither Williamson nor any other witness refuted
Trooper Brice’s testimony that Williamson consented to providing a blood
specimen and that Brice read the DIC-24 to Williamson shortly after arriving at
the hospital (and ostensibly before Williamson’s mother and stepfather
arrived).  However, the trial court was free to disbelieve this testimony,
which the court expressly did in its Findings of Fact Nos. 8 and 9.  See
Garza v. State, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007).