

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-20-00205-CV

———————————————————

TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant

V.

NICHOLAS ALBERT DOUGLAS, Appellee

---

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2019-009269-3

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

The Texas Department of Public Safety (DPS) suspended Nicholas Albert Douglas's driver's license because he allegedly refused to give a blood specimen when he was arrested for driving while intoxicated. Douglas requested and received an administrative hearing before an administrative law judge, who affirmed the suspension. Douglas appealed to the county court at law, which reversed the judgment of the administrative law judge, thereby reversing the suspension. DPS appeals to this court, seeking to have the judgment of the county court at law reversed and the judgment of the administrative law judge reinstated. We will affirm the judgment of the county court at law.

## I.    Background Facts

Douglas received a phone call shortly after 1:00 a.m. on November 19, 2018, from a friend requesting that Douglas come pick him up because law enforcement had detained him for public intoxication. Douglas agreed.[1] When Douglas arrived on the scene at 1:19 a.m., Tarrant County Sheriff's Deputy Bryan Naranjo smelled alcohol on Douglas, although he did not see Douglas driving erratically. Deputy Naranjo asked Douglas if he would voluntarily undergo standard field sobriety tests to make sure it was safe for Douglas to drive his friend home. Douglas agreed. Deputy Naranjo administered the sobriety tests in the gravel parking lot of a gas station. (This

---

[1]Douglas admitted to the officer on the scene that he had consumed alcohol before his friend called.

will be described as the roadside encounter.) The results of those field sobriety tests were not conclusive for intoxication but were sufficiently suggestive for Deputy Naranjo to believe he had probable cause to arrest Douglas for driving while intoxicated. Deputy Naranjo officially arrested Douglas for driving while intoxicated at 1:34 a.m. According to Deputy Naranjo's testimony at the administrative hearing, it was during their roadside encounter that Douglas refused a blood draw. The record is silent about any warnings Deputy Naranjo may have given to Douglas about the consequences of refusing a blood draw during the roadside encounter.

Douglas and Deputy Naranjo's interaction then shifted from the roadside to Deputy Naranjo's patrol car. (This will be described as the car encounter.) Deputy Naranjo escorted Douglas, now handcuffed, to the back seat of the car, where Douglas's friend was already detained. The friend, who was intoxicated, was quite loud and boisterous during the car encounter.

According to Deputy Naranjo, he stood outside the back passenger door of the car next to Douglas, who was sitting inside. Deputy Naranjo attempted to read a Statutory Warning DIC-24 form (consent to taking specimen) to Douglas around 2:09 a.m., holding the form in front of Douglas so that Douglas could read along with him. However, the friend's ongoing verbal interruptions and Douglas's multiple questions about the form caused this to be an extended process. Eventually, Deputy Naranjo's lieutenant intervened and tried to simplify the blood specimen refusal process. Douglas did not refuse to sign the DIC-24 form, and Deputy Naranjo did

not document on the DIC-24 form that Douglas refused to sign it.[2] Although Deputy Naranjo testified that they were trying to get an answer from Douglas about drawing blood before he was transported to the jail, he did not testify that he received an answer from Douglas before he was transported to the jail except for his refusal during the roadside encounter. While Deputy Naranjo's reports reflect that Douglas refused to give a blood specimen, the timing of the refusal is not specifically documented; Deputy Naranjo testified that the refusal occurred during the roadside encounter.

When they got to the jail, Douglas was booked, and Deputy Naranjo obtained a warrant for a blood draw. Although Douglas orally expressed his desire to consent to a blood draw once he got to the jail, Deputy Naranjo said he obtained a warrant to preclude any questions of custodial coercion. The blood specimen showed a blood alcohol concentration of below 0.08 percent, and the district attorney's office dropped the driving while intoxicated charge. However, DPS suspended Douglas's driver's license for refusing a blood draw pursuant to Texas Transportation Code Section 724.035. *See* Tex. Transp. Code Ann. §§ 724.015, .035. Douglas requested and received an administrative hearing on his license suspension. The administrative law judge (ALJ) upheld the suspension. Douglas appealed to County Court at Law

---

[2]The process was also extended because of a disagreement over the disposition of Douglas's car. Deputy Naranjo initially told Douglas that Mrs. Douglas could take custody of his car but the lieutenant ordered it towed. This was upsetting to Douglas since it was the family's only car.

4

Number 3 in Tarrant County, which reversed the ALJ's judgment, found that the ALJ's decision was not supported by substantial evidence, and ordered the restoration of Douglas's driver's license. DPS has appealed to this court seeking reversal of the trial court's judgment and reinstatement of the suspension.

## II.  Standard of Review

We review administrative license-suspension cases under the substantial-evidence standard. *See* Tex. Transp. Code Ann. §§ 724.047 (stating that appeals under Chapter 724 are governed by Chapter 524), 524.002(b) (stating that Chapter 2001 of the Government Code applies to proceedings); Tex. Gov't Code Ann. § 2001.174; *see also Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (citing *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999)); *Tex. Dep't of Pub. Safety v. McHugh*, No. 03-13-00261-CV, 2014 WL 5420407, at *2–3 (Tex. App.—Austin Oct. 14, 2014, no pet.) (mem. op.). Whether substantial evidence supports the administrative decision is a question of law, and on questions of law, neither the trial court nor the ALJ is entitled to deference on appeal. *Alford*, 209 S.W.3d at 103; *McHugh*, 2014 WL 5420407, at *2–3. Thus, we review de novo the trial court's determination of whether substantial evidence supports the administrative decision. *See McHugh*, 2014 WL 5420407, at *2–3; *Tex. Dep't of Pub. Safety v. Lee*, No. 03-11-00532-CV, 2012 WL 3793261, at *3 (Tex. App.—Austin Aug. 31, 2012, no pet.) (mem. op.); *Tex. Dep't of Pub. Safety v. Gonzales*, 276 S.W.3d 88, 91 (Tex. App.—San Antonio 2008, no pet.) (op. on reh'g).

An appellate court conducting a substantial-evidence review may not substitute its judgment for the ALJ's judgment "on the weight of the evidence on questions committed to agency discretion." Tex. Gov't Code Ann. § 2001.174; *Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984); *McHugh*, 2014 WL 5420407, at *2–3. The ALJ's findings in this regard are entitled to deference on appeal. *Alford*, 209 S.W.3d at 103. To warrant reversal or remand of an agency decision, the reviewing court must conclude that the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

> (A) in violation of a constitutional or statutory provision;
>
> (B) in excess of the agency's statutory authority;
>
> (C) made through unlawful procedure;
>
> (D) affected by other error of law;
>
> (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
>
> (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code Ann. § 2001.174(2). The dispositive issue for the reviewing court is not whether the agency's decision was correct but whether some reasonable basis exists in the record for the agency's action. *Mireles*, 9 S.W.3d at 131. We must affirm administrative findings in contested cases if more than a scintilla of evidence supports them, and we may affirm the agency's decision "even if the evidence preponderates

6

against it." *See id.* We review de novo issues on appeal that are strictly questions of law. *Tex. Dep't of Pub. Safety v. Alloca*, 301 S.W.3d 364, 367 (Tex. App.—Austin 2009, pet. denied) (op. on reh'g); *Tex. Dep't of Pub. Safety v. Jackson*, 76 S.W.3d 103, 106 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

## III.  Analysis

DPS raises three issues on appeal, which we interpret as follows:

a)  Was the ALJ's finding that Douglas received proper warnings under Transportation Code Section 724.015 supported by substantial evidence?

b)  Did Deputy Naranjo's failure to require Douglas to sign the DIC-24 form documenting his alleged refusal preclude DPS from suspending Douglas's license?

c)  Did the trial court abuse its discretion by substituting its judgment of the facts for that of the ALJ?

Because we hold the answer to the first issue to be in the negative, we will affirm the judgment of the trial court without the need to address the remaining issues. *See* Tex. R. App. P. 47.1.

The appropriate starting point for our analysis is a review of the applicable portions of the Texas Transportation Code. Section 724.042 lays out the four elements DPS must prove at a hearing on the suspension of a person's driver license for refusal to submit to the taking of a specimen:

(1) reasonable suspicion or probable cause existed to stop or arrest the person;

(2) probable cause existed to believe that the person was . . . operating a motor vehicle in a public place while intoxicated . . . ;

7

(3) the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and

(4) the person refused to submit to the taking of a specimen on request of the officer.

Tex. Transp. Code Ann. § 724.042. The only subsection at issue here is number 4. In that regard, Section 724.015 of the Transportation Code provides, in pertinent part, that before requesting a person to submit to the taking of a specimen, the officer shall inform the person orally and in writing that:

(1) if the person refuses to submit to the taking of the specimen, that refusal may be admissible in a subsequent prosecution;

(2) if the person refuses to submit to the taking of the specimen, the person's license to operate a motor vehicle will be automatically suspended, whether or not the person is subsequently prosecuted as a result of the arrest, for not less than 180 days;

(3) if the person refuses to submit to the taking of a specimen, the officer may apply for a warrant authorizing a specimen to be taken from the person;

(4) if the person is 21 years of age or older and submits to the taking of a specimen designated by the officer and an analysis of the specimen shows the person had an alcohol concentration of a level specified by Chapter 49, Penal Code, the person's license to operate a motor vehicle will be automatically suspended for not less than 90 days, whether or not the person is subsequently prosecuted as a result of the arrest; [and]

. . . .

(7) the person has a right to a hearing on the suspension or denial if, not later than the 15th day after the date on which the person receives the notice of suspension or denial or on which the person is considered to have received the notice by mail as provided by law, the department receives, at its headquarters in Austin, a written demand, including a facsimile transmission, or a request in another form prescribed by the department for the hearing.

8

*Id.* § 724.015. DPS concedes that "[e]vidence of statutory warning is a necessary predicate to admission of evidence that the motorist charged with driving under the influence of intoxicants refused to provide a specimen." *See Tex. Dep't of Pub. Safety v. Latimer*, 939 S.W.2d 240, 245 (Tex. App.—Austin 1997, no pet.) (per curiam); *Janak v. State*, 826 S.W.2d 803, 805 (Tex. App.—Texarkana 1992, no pet.). As also conceded by DPS, "[t]he nature of the warnings is to emphasize the importance of ensuring that the consent is given freely and with a correct understanding of the actual statutory consequences of refusal." *See Erdman v. State*, 861 S.W.2d 890, 894 (Tex. Crim. App. 1993), *overruled on other grounds by Fienen v. State*, 390 S.W.3d 328, 335 (Tex. Crim. App. 2013); *State v. Woehst*, 175 S.W.3d 329, 332 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Urquhart v. State*, 128 S.W.3d 701, 706 (Tex. App.—El Paso 2003, pet. ref'd); *Sandoval v. State*, 17 S.W.3d 792, 795 (Tex. App.—Austin 2000, pet. ref'd).

Applying these concessions and authorities to the record in this case mandates the affirmance of the trial court's judgment. Douglas's purported refusal to give a blood specimen occurred during the roadside encounter between Douglas and Deputy Naranjo. The record is devoid of any evidence of Deputy Naranjo or anyone else giving the required statutory warnings, either orally or in writing, to Douglas at any time during the roadside encounter, much less before the alleged refusal during the roadside encounter. Considering that the purpose of the warnings is to ensure that consent is given freely and with a correct understanding of the actual statutory consequences of refusal, we do not believe that a record devoid of the giving of such

9

warnings before a refusal can be anything but a failure to show that the ALJ's decision is supported by substantial evidence.

DPS contends that the oral and written warnings need not be contemporaneous in order to meet the statutory requirement. *See Latimer*, 939 S.W.2d at 245 (concluding that tendering written notice the next day to the hospital nurse to give to the defendant satisfied the statute). We need not decide that question to resolve this case. Here, there was no evidence of the statutory warnings being given, either orally or in writing, before the alleged roadside refusal.

DPS argues that Deputy Naranjo read the statutory warnings to Douglas while Douglas was in the car after being arrested and that Douglas had the opportunity to read along with the deputy as he read the warnings, thereby satisfying the statute. However, the alleged roadside refusal had already occurred, and no further refusal occurred during the car encounter or at the jail. In fact, the only actual response by Douglas after the roadside encounter, besides questions about the DIC-24 form and discussions about car towing, occurred at the jail where he requested a blood draw. At that point, though, Deputy Naranjo had already initiated a warrant to obtain a blood specimen so that there would be no issue of in-custody coercion. The giving of the statutory warnings about refusal to give a blood specimen after obtaining a refusal without the warnings is ineffective to justify the prior refusal. To allow otherwise would defeat the entire purpose of obtaining free and informed refusal. Finally, DPS contends that there must not only be error but that the error must have prejudiced

10

Douglas's substantive rights in order to justify a reversal of the agency's decision. *See Tex. Dep't of Pub. Safety v. Pruitt*, 75 S.W.3d 634, 638 (Tex. App.—San Antonio 2002, no pet.); *Tex. Dep't of Pub. Safety v. Nordin*, 971 S.W.2d 90, 95–96 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Tex. Dep't of Pub. Safety v. Cantu*, 944 S.W.2d 493, 495 (Tex. App.—Houston [14th Dist.] 1997, no writ). There is no doubt that Douglas's substantive rights were prejudiced. DPS sought to suspend Douglas's license for his alleged refusal to give a blood specimen. By statute, he was entitled to specific warnings to enable him to give a free and informed refusal, particularly advising him of the consequences should he refuse, including the suspension of his driver's license. He was not given those warnings before he allegedly refused. After he was given the warnings, he tried to give a blood specimen, but his request was not honored. The blood specimen, which was drawn by virtue of a warrant, eventually provided results that led to the dismissal of the driving while intoxicated charges. Ironically, however, DPS chose to suspend his license for his alleged refusal to give the very specimen that ultimately exonerated him from criminal charges. There could be no clearer picture of prejudice to substantive rights than what is presented here. We thus overrule DPS's first issue, which is dispositive of this appeal.

## IV. Conclusion

A statutory prerequisite to license suspension for refusal to give a specimen of blood when a person has been arrested for driving while intoxicated is giving the arrested person the statutory warnings before the refusal occurs. Both sides agree that

11

the purpose of the warnings is to ensure that a refusal to give a specimen is a voluntary and informed refusal. There is no evidence in the record that demonstrates that the alleged roadside refusal was made after any statutory warnings were given either orally or in writing. Therefore, the alleged refusal was not voluntary and informed and did not comply with the Transportation Code's requirements. This failure prejudiced Douglas's substantive rights. Such being the case, the ALJ's affirmance of the suspension was not supported by substantial evidence and constituted reversible error. The judgment of the trial court reversing the order of suspension was thus proper. DPS's first issue is overruled.

Having overruled DPS's first issue, which is case determinative, we need not address DPS's second and third issues. *See* Tex. R. App. P. 47.1.

The judgment of the trial court is affirmed.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: April 15, 2021

12